Paul Thieme, Appellee, v. John D. MacArthur,
Appellant.

Gen. No. 9,035.

Opinion·filed April 3, 1936.  Rehearing denied and opinion modified May 5, 1936.

ARTHUR L. PAULSON, of Elgin, for appellant.

B. J. KNIGHT and J. E. GOEMBEL, both of Rockford, for appellee; PERLEY T. LUPTON, of Decatur, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.

This is a suit brought against the Marquette Life Insurance Company, Harry Getzelman and John D. MacArthur to recover damages for malicious prosecution. The complaint charged that on June 16, 1933, MacArthur and the insurance company caused Getzelman to appear before a justice of the peace of Kane county and file a complaint charging the plaintiff with having obtained money from Getzelman by virtue of the confidence game by conspiracy; that Getzelman was aided, abetted and persuaded in so doing by the other defendants; that they all acted falsely, maliciously and without any reasonable or probable cause and that as a result thereof a warrant was issued and the plaintiff was arrested and imprisoned for 36 hours. The complaint then charged that he, the plaintiff, suffered anguish and pain in body and mind and injury to his credit and reputation and that he expended $500 in procuring his discharge from said imprisonment.

It was then alleged that the cause in the justice court was continued from time to time and was finally terminated, having been dismissed on September 8, 1933, for lack of sufficient evidence.

The answer filed on behalf of all the defendants denied the allegations of the complaint and averred that Getzelman made a full and complete disclosure of all the facts to the State's attorney of Kane county, and upon his advice and without the aid and persuasion of MacArthur and without malice, Getzelman made the complaint upon which the warrant for plaintiff's arrest issued. A jury was waived and the issues made by the pleadings were submitted to the court for determination. During the progress of the trial the suit was dismissed by the plaintiff as to the insurance company and Getzelman and the cause proceeded against MacArthur, resulting in a judgment against him for $2,750 and the record is in this court for review.

In *Glenn v. Lawrence*, 280 Ill. 581, the law on the subject of malicious prosecution was summed up as follows:

"The facts which will sustain an action for malicious prosecution are (1) The commencement or continuance of an original, criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff, who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to the plaintiff."

In the instant case it is insisted by appellant that the evidence discloses (1) that he was not responsible for the criminal proceeding, (2) that there was not a bona fide termination of that proceeding but that it was dismissed in the justice court as the result of an agreement between counsel for appellee and the State's

attorney, (3) that appellant was not actuated by malice, (4) that there was probable cause for the commencement of the criminal action, (5) that the advice of the State's attorney was followed after a complete disclosure of all the facts and finally (6) that the judgment is excessive.

The evidence discloses that appellant is the vice president of the Marquette Life Insurance Company and appellee and one John Perry are former agents and employees of said company. In August, 1932, Perry successfully solicited Getzelman, who is a farmer living in Kane county, to become a policyholder in said company and the company issued to him seven policies, one each upon the life of himself, his wife and their five children. The total initial premiums upon these five policies aggregated $204.90 and for this amount Getzelman executed his note dated August 2, 1932, to the company and gave it to Perry. This note became due, according to its terms, 60 days after date. At the same time the note was executed, Getzelman gave Perry his check for $30 and this amount was indorsed on the note. Appellee was not present and had nothing whatever to do with procuring Getzelman to become a policyholder in the company and knew nothing about the policies having been written until he was told about it at the Chicago office of the company by MacArthur. Appellee at that time was in the employ of the company and had been since March, 1932. On September 16, 1932, Perry was discharged by the company but was re-employed by the company a short time later but did not remain in the employ of the company very long, but was again discharged. Appellee was directed by appellant, acting for the company, to look into the business which Perry had written and Getzelman was one of the policyholders appellee was directed to see. Appellee called upon Getzelman at his home, and on January 12, 1933, went with him to Chicago,

their purpose being to obtain the return premium on a policy of Getzelman in another company, which had been canceled and apply that return premium upon the note of Getzelman to the Marquette Life Insurance Company. A call was made at the office of the other insurance company and Getzelman and appellee were informed that the money would be ready for payment by February 15, 1933. According to Getzelman's testimony appellee told him, on January 12, 1933, that Perry was back working for the company and that it would be all right to pay his note, which the company held, to Perry. Getzelman further testified that Perry, accompanied by appellee, was at his, Getzelman's, home in February, March and also in April, 1933. Appellee denied that he told Getzelman, in January, 1933, that Perry was again in the employ of the company and denied that he told Getzelman that it would be all right to pay him the note and stated that he did not remember whether he and Perry called at Getzelman's home in February, March or April, 1933, but testified positively that he had no dealings with Perry after October 9, 1932. On May 31, 1933, Perry, not accompanied by appellee, drove to Getzelman's home and requested Getzelman to pay the note. Getzelman had his wife draw a check upon his account for $179.40, making the same payable to the order of Perry, and this check was delivered to Perry by Getzelman. Perry promptly cashed the check, appropriated the proceeds and disappeared. On June 16, 1933, appellant called upon Getzelman and asked him about paying the company the note and was informed by Getzelman that it had been paid to Perry and Getzelman exhibited to appellant his check of May 31, 1933, which had been delivered to Perry. In reply to appellant's request as to why he had paid Perry when the company had instructed him not to do so, Getzelman testified that he said it was because appellee had said it would be all

right to do so and he, Getzelman, then told appellant of the visits of Perry and appellee to his home. Getzelman then asked appellant why the note was not returned to him and appellant advised him that the company had not received the money from Perry and that the company would have to look to Getzelman for the money due thereon. Getzelman further testified that he then inquired of appellant what he should do and appellant said he, Getzelman, would have to get a warrant out for appellee or pay the note and appellant suggested seeing Mr. Carbary, the State's attorney, about procuring the warrant. Appellant then drove Getzelman to Elgin and accompanied him to the office of Mr. Carbary.

The evidence is conflicting as to what occurred at the office of the State's attorney. All agree that appellant did practically all the talking; Getzelman said but little. Appellant testified that he told Mr. Carbary that his only source of information was Getzelman and that he, appellant, told the State's attorney what Getzelman had told him and that he made no misrepresentations. Mr. Carbary, the State's attorney, testified that he was told by appellant that Perry and appellee had been to Getzelman's farm on different occasions and were together at the time Getzelman paid his note to the company by delivering to Perry his check on May 31, 1933; that this check for $179.40 was shown to him and he was told that Perry and appellee had conspired to obtain the money represented by that check from Getzelman by means of the confidence game; that he was also told that Perry and appellee had been employed by the company but that some time previous to that time they had both been discharged, were not agents of the company and had no authority to collect the money; that appellant said appellee had been discharged by the company three or four months before and that he was a rascal. Mr. Carbary further

testified that had he known that appellee had nothing to do with Perry in securing the check from Getzelman, he would not have authorized the issuance of the warrant; that he, Carbary, knew none of the parties involved and knew nothing of the facts except what he learned from appellant and Getzelman and that he didn't think Getzelman said "over a line" all the time they were in his office. Getzelman testified that appellant told the State's attorney that the statements he was making were those gotten from Getzelman that morning and that all appellant knew was what Getzelman had told him and that appellant did not say that appellee and Perry were both at Getzelman's farm when the check was given.

A. J. Strickman, the justice of the peace, testified that before issuing the warrant, appellant and Getzelman came to his office directly from the office of the State's attorney and that appellant told him, Strickman, that appellee and Perry had formerly been employed by the insurance company, but that both had been discharged; that although they were not authorized to make collections for the company, still they had gone to Getzelman's home and he, Getzelman, had paid to appellee and Perry $179.40. He further testified that he issued the warrant for appellee's arrest upon the recommendation of the State's attorney. The evidence further discloses that upon the issuance of the warrant, it was given to the chief of police of Elgin to serve and he immediately wired the chief of police of Rockford advising him of the fact that he had the warrant and of the nature of the charge therein and requested him to arrest and hold appellee. This was done and appellee was placed in the city jail of Rockford and later removed to the jail at Elgin, where he was detained overnight and on the following day was released on his own recognizance.

A reading of the foregoing, which is a fair résumé of the evidence in this record, is sufficient to disclose that there is no merit in appellant's contention that he was not the legal causation of the criminal proceeding. It is true that Getzelman signed the complaint before the justice of the peace, but the evidence is that appellant suggested to Getzelman that they go to the State's attorney's office and procure a warrant for appellee's arrest and it was appellant who drove Getzelman to Elgin and accompanied him to the office of the State's attorney. It was appellant who did practically all of the talking when they got there. It was appellant who led the State's attorney to believe that appellee and Perry were not in the employ of the insurance company when Getzelman delivered his check for the payment of his note, and it was appellant's statements upon which the State's attorney relied when he authorized the warrant to be issued. From all the evidence and all the facts and circumstances in evidence, it is clear that the trial court was justified in finding that appellant was the legal causation of the criminal proceeding. Nor is there any merit in appellant's contention that the criminal proceeding was terminated by agreement of counsel for appellee and the State's attorney. The record of the justice of the peace discloses that upon the hearing, after Getzelman had testified, the State's attorney stated to the justice that in the absence of appellant he was afraid the People would not be able to make a showing of conspiracy between appellee and Perry, and that if counsel for appellee desired to make a motion to dismiss the conspiracy case, he would not oppose it. Thereupon counsel for appellee moved the court to dismiss the case for lack of sufficient evidence. The court allowed this motion and stated: ''I will dismiss the case of People v. Paul Thieme and John Perry for lack of sufficient evidence'' and entered in his

docket the following order: "On motion of B. J. Knight, attorney for Paul Thieme and John Perry, defendants, cases dismissed for lack of sufficient evidence."

It is next insisted that there was probable cause for the commencement of the criminal action and that the evidence discloses appellant was not actuated by malice. Appellant testified that he had no knowledge concerning the matters which transpired between Getzelman and Perry except the information given him by Getzelman, and Getzelman denies telling appellant that appellee was present when he delivered to Perry his check. If appellant only knew what Getzelman testified he told him, then the only information appellant had when he went to the office of the State's attorney and made to him the statements testified to by Mr. Carbary was that appellee and Perry had been to the Getzelman farm together on occasions and that appellee had said Perry was in the employ of the company and that it would be all right to pay him. These alone would not justify Getzelman or appellant in filing the criminal complaint against appellee. The trial court expressly found that appellant acted maliciously and inasmuch as the evidence tends to prove that appellant falsely told the State's attorney that appellee was with Perry when Getzelman delivered to Perry the check, that appellant told the State's attorney that appellee was not in the employ of the insurance company when as a matter of fact he was at that time in the employ of the company and that he told the State's attorney that appellee was a rascal, we are, from a consideration of all the evidence in this record, unable to say that the trial court's findings were not justified. The law is well settled that malice will not be inferred where probable cause exists; still, where there is an entire lack of probable cause, malice may be presumed to have been the motive actuating the prosecution. *Most v. Case-Moody Pie Corp.*, 279 Ill. App. 628

(Abst.); *Roy v. Goings,* 112 Ill. 656; *Cripe v. Pevely Dairy Co.,* 275 Ill. App. 231.

It is conceded that advice of counsel is always a good defense to a proceeding of this character when a full and complete disclosure of all the facts is made to a lawyer of good standing and such advice is acted upon in good faith. If the testimony of Mr. Carbary is true, a full and complete disclosure of all the facts were not made by appellant to him, and if he made to the State's attorney the false statements herein referred to, it cannot be said that appellant acted in good faith. In *Most v. Case-Moody Pie Corp., supra,* the court said: "The courts of this State have always been vigilant in this class of cases in guarding against the danger that the jury may regard the acquittal of the plaintiff upon a criminal charge as justifying the inference that the prosecution was wrongfully begun. The record of acquittal is admissible only for the purpose of showing the determination of the proceeding. It has no bearing upon the question of want of probable cause or of evidence of malice. In a criminal case the burden of proof is upon the State to establish guilt beyond a reasonable doubt. In a suit for malicious prosecution the burden is upon plaintiff to prove by a preponderance of the evidence the absence of probable cause and the presence of malice. In *Collins v. Hayte,* 50 Ill. 353, Chief Justice Breese said: 'Our experience teaches us there are few questions of law more difficult of comprehension by a jury, than those which govern trials for malicious prosecutions. It seems difficult for them to appreciate, if the plaintiff was really innocent of the charge for which he was prosecuted, that he still ought not to recover. They do not readily comprehend why an innocent man may be prosecuted for a supposed crime or offence, and yet have no recourse against the prosecutor who caused his arrest and imprisonment, and yet the preservation of the peace and order of society require, that even

innocent men may be compelled to submit to great inconvenience and hardship, rather than citizens should be deterred from instituting prosecutions where there is reasonable or probable grounds to believe in the existence of guilt.' . . . In *Thomas v. Muehlmann,* 92 Ill. App. 571, this court said: 'The decisions of the courts incline toward an encouragement of criminal prosecutions when they are instituted in good faith, without malice, and for the purpose of punshing violators of the law, and for that reason suits for malicious prosecution are not favored and have been critically examined. *Reynolds v. Kennedy,* 1 *Wilson,* 232; *McBean v. Ritchie,* 18 Ill. 114; *Hurd v. Shaw,* 20 Ill. 354; *Israel* case, *supra; Barrett v. Spaids,* 70 Ill. 408; *Angelo v. Faul,* 85 Ill. 106.' . . . In *Chicago, R. I. & P. Ry. Co. v. Pierce,* 98 Ill. App. 368, this court said: 'The citizen who in good faith and without malice, under circumstances strongly tending to show guilt, institutes a criminal prosecution, should not be cast in damages because afterward upon a full investigation the suspicious circumstances are explained, and the innocence of the party accused made apparent. (*Jacks v. Stimpson,* 13 Ill. 701; *Collins v. Hayte,* 50 Ill. 353; *Angelo v. Faul,* 85 Ill. 106.) The courts incline to the encouragement of criminal prosecutions, when instituted in good faith, without malice, and for the purpose of punishing violators of the law, and for that reason suits for malicious prosecution are not favored.' "

This court is in full accord with the principles of law enunciated in the several quotations taken from cases cited by the court in the opinion in the *Most* case, but in the instant case what was said in the *Collins* case about the difficulty a jury has in comprehending why an innocent man may be prosecuted for a supposed crime and yet have no recourse against the prosecutor is not applicable because here a jury was waived and the cause tried by a learned and experienced trial judge. There is evidence in the record

which justified the finding that appellant's motive in causing the criminal proceeding to be instituted was not entirely the protection of the interests of his company or the proper enforcement of the criminal law. If his motive was to collect Getzelman's note from appellee, his conduct is inexcusable. Appellant knew that appellee was, at the time the warrant was issued, an employee of the same company of which appellant was vice president and if all the information he had came from Getzelman and if Getzelman told him what he testified he did, then when appellant advised Getzelman to go to the office of the State's attorney and get a warrant for appellee's arrest, he did so because, as we have said, Getzelman had told him that Perry and appellee had been to Getzelman's home on occasions other than the one when Getzelman paid Perry the money and that appellee had, upon one of these occasions, said it would be all right for Getzelman to pay Perry. This information did not warrant appellant's conduct and while the evidence is conflicting as to just what appellant did say to the State's attorney, we are not prepared to hold that the findings of the trial court to the effect that a fair disclosure of the facts was not made by appellant to the State's attorney and that there was not probable cause for the institution of the criminal action and that appellant was not prompted by proper motives but was actuated by malice, are manifestly against the weight of the evidence, but in our opinion these findings of the trial court are supported by the testimony in this record.

In the absence of proof of malice, appellee would only be entitled to recover compensatory damages. *Hanneman v. Minneapolis, St. P. & S. S. M. Ry. Co.*, 248 Ill. App. 196. These were shown to be $375 attorney fees expended by appellee in defense of the criminal proceeding and while there is also some evidence that following his arrest appellee was unable to procure work, the evidence does not show that this may not have been due to the prevalent economic condition

of the country, rather than to the fact that appellee had been charged with the commission of a criminal offense by appellant. As stated, the evidence in this record, in our opinion, warranted the finding that the conduct complained of was maliciously done, and if so, under the authorities, appellee was entitled to recover a substantial sum as vindictive damage or smart money in addition to compensatory damages. The evidence is that appellee was 53 years of age at the time of the trial. He was born in Germany and came to America in 1910, well educated in insurance and banking law and he had been employed by various banks, newspapers and insurance companies. For several years he was manager of the Foreign Exchange Department of the First National Bank of St. Louis, receiving for his services $350 per month. He had never committed any crime and had never been arrested before this unfortunate occurrence. From an examination of all the evidence and the facts and circumstances appearing in this record, we are not inclined to substitute our judgment upon the question of damages for that of the trial court.

We find the record free from reversible error and therefore the judgment of the trial court is affirmed.

*Judgment affirmed.*