PAUL LEVIN, Plaintiff-Appellant, v. ROBERT C. KING, Defendant-Appellee.

First District (5th Division)   No. 1—94—2191

Opinion filed March 31, 1995.

David J. Letvin and David M. Stein, both of Letvin & Stein, of Chicago, for appellant.

Jerome H. Torshen and Zoran Dragutinovich, both of Torshen, Spreyer & Garmisa, Ltd., of Chicago, for appellee.

JUSTICE T. O'BRIEN delivered the opinion of the court:

Plaintiff, Paul Levin, appeals from an order of the circuit court which granted defendant, Robert C. King, judgment on the pleadings in a malicious prosecution action. The circuit court ruled that Levin had failed to plead special damages as required under Illinois law. We affirm.

## FACTS

The history of this case spans some 10 years. In early 1984, King, a land developer, became interested in competing for the right to participate in the development of low-to-middle income housing. The proposed housing, planned by the United States Department of Housing and Urban Development, was to be built in the Jefferson Park neighborhood in Chicago, Illinois. To that end, King sought financing from the issuance of bonds backed by the Illinois Housing Development Authority (IHDA) and the Chicago Metropolitan Housing Development Commission.

The IHDA initially included the development in a May 1984 bond sale. Four days before the bond sale, Levin, a Jefferson Park resident, contacted the IHDA and threatened litigation to stop the project.[1] The IHDA withdrew the development from the bond sale because the timing of Levin's phone call left the IHDA with little time to disclose the opposition or to obtain a "no merit" letter from the bond counsel. The IHDA's general counsel, however, believed Levin's threatened litigation had no merit.

King subsequently filed an action against Levin for tortious interference with advantageous business relationship. King alleged that he incurred damages from the loss of the IHDA funding as a result of Levin's baseless threat of litigation. At the ensuing trial, the circuit court directed a verdict against King, ruling that he had failed to prove Levin's protest was not protected by a first amendment privilege. The appellate court affirmed. *King v. Levin* (1989), 184 Ill. App. 3d 557, 559, 540 N.E.2d 492.

---

[1]Plaintiff informed IHDA that the development was contrary to the spirit of certain ongoing Federal district court litigation and "that the neighborhood was already over saturated with subsidized low income housing and the neighborhood needed middle income development."

Levin then filed the malicious prosecution suit against King, which is the subject of this appeal. In his complaint, Levin alleges that, as a result of King's tortious interference suit, Levin ceased voicing his opposition to the proposed housing development and "substantially reduced his activities in public affairs." Levin asserts that King's suit was, in reality, a suit designated by some commentators as a "SLAPP suit," an acronym fashioned by some commentators and courts for "Strategic Lawsuit Against Public Participation," brought by King without probable cause. Levin maintained King's litigation "substantially chilled [his] exercise of his rights of free expression and petition of government *** [and] induced fears of adverse financial consequences to himself and jeopardized other persons who opposed" the housing development. Levin claimed special damages in the nature of the "loss, damage and harm to constitutional rights of free speech and the right to petition government" in addition to emotional distress, fees, and expenses.

The circuit court granted King judgment on the pleadings, ruling that Levin had failed to allege specific facts that King either constructively or actually seized Levin's right to free speech or that King actively sought issuance of any court remedy such as an attachment or injunction to prevent Levin's free speech. As a result, the damages sought by Levin did not fall outside those damages incurred during the course of normal litigation. The court, as a matter of law, found Levin failed to allege the element of special injury necessary to establish a malicious prosecution action.

## OPINION

The issues presented to this court are of apparent first impression. Levin maintains that he need not allege a special injury because he has alleged an interference with his first amendment right to petition the government for redress. He further contends that King's tortious interference action did not constitute ordinary civil litigation and that, as such, he need not allege any special injury. We disagree.

■ Illinois courts have long disfavored actions for malicious prosecution. (See, *e.g.*, *Schwartz v. Schwartz* (1937), 366 Ill. 247, 250, 8 N.E.2d 668; *Shedd v. Patterson* (1922), 302 Ill. 355, 359, 134 N.E. 705.) To discourage such actions and promote a policy of open access to the courts, a plaintiff in a suit for malicious prosecution must show that the wrongfully filed action was terminated in his favor and was brought maliciously and without probable cause. Finally, he must plead and prove some "special injury" or special damage beyond the usual expense, time or annoyance in defending a lawsuit. (*Schwartz*, 366 Ill. at 250-51.) "Special injury," therefore, has usually been identi-

fied with an arrest or seizure of property or some constructive taking or interference with the person or property. *Schwartz*, 366 Ill. at 250.

In one of the earliest references to the special injury requirement, our supreme court addressed "whether damages can be recovered for the malicious prosecution without probable cause of *an ordinary civil suit*, begun by personal service of process, and unaccompanied either by an arrest of the person or by seizure of property." (Emphasis added.) (*Smith v. Michigan Buggy Co.* (1898), 175 Ill. 619, 624, 51 N.E. 569.) The court answered the question in the negative: "an action for the malicious prosecution of a civil suit without probable cause will not lie where the process in the suit so prosecuted is by summons only, and is not accompanied by arrest of the person, or seizure of the property, or other special injury not necessarily resulting in all suits prosecuted to recover for like causes of action." (*Smith*, 175 Ill. at 627.) As a result, the court affirmed the dismissal of a malicious prosecution case brought as a result of an unsuccessful civil action by an employer against its salesman alleging fraudulent misrepresentation.

Twenty-two years later, the supreme court revisited the issue of special injury in *Norin v. Scheldt Manufacturing Co.* (1921), 297 Ill. 521, 130 N.E. 791. In the suit giving rise to the malicious prosecution charge, Scheldt Manufacturing Company (Scheldt) filed a petition in bankruptcy against Norin, requesting that Norin be adjudged a bankrupt. Scheldt filed the petition on publication alone. When Norin failed to appear in the proceeding, the court entered a bankruptcy judgment against him. Norin later learned of the bankruptcy action and commenced vacatur proceedings. During the hearing to set aside the default, one of Scheldt's officers admitted he had known Norin's place of residence at the time service by publication was obtained. Moreover, Scheldt admitted that it had been unable to prove Norin's insolvency at the time it filed its petition. Accordingly, the court vacated its previous judgment and dismissed Scheldt's petition. Norin subsequently brought suit against Scheldt to recover damages for the malicious prosecution of the bankruptcy suit.

In urging the dismissal of the malicious prosecution suit, Scheldt argued Norin sustained no special injury because the bankruptcy judgment had ultimately been vacated. Moreover, Norin's property had not been seized nor had a trustee been appointed. Scheldt characterized the bankruptcy litigation as an "ordinary civil suit," which required Norin to plead and prove special injuries. The supreme court rejected these contentions and concluded that a bankruptcy action could not be considered "ordinary" litigation because of its "most far-reaching and drastic" effects. (*Norin*, 297 Ill. at 525.)

Whether the property of the bankrupt be seized or not, "no prudent person will buy from him or sell anything to him on credit, because all transactions between bankrupt and third persons after the petition in bankruptcy has been filed are liable to be investigated, reviewed, set aside or controlled should there be an adjudication of bankruptcy." (*Norin*, 297 Ill. at 525-26.) Therefore, the peculiar, *sui generis* nature of the bankruptcy proceeding itself allowed Norin's malicious prosecution action to lie. The court announced that suits "which are themselves unusual in their effect upon the defendant" fall outside the general rule announced in *Smith*. *Norin*, 297 Ill. at 527.

The supreme court identified another facet of extraordinary litigation in *Shedd v. Patterson* (302 Ill. 355, 134 N.E. 705). There, Edward Shedd brought a malicious prosecution suit against John Patterson. Patterson previously had filed nine unsuccessful suits against Shedd, all of which related to the foreclosure of leasehold estate for unpaid rent. Relying on the decisions in *Smith* and *Norin*, the appellate court affirmed the trial court's dismissal of the malicious prosecution action because the underlying suits were ordinary civil actions with no attendant special injury. The supreme court reversed. Initially, the court noted that Illinois courts are open to all litigants for the settlement of their rights without the fear of prosecution for calling upon the courts in exercising their right to so act. As a result, even those with evil aims in bringing suit without probable cause are given "one bite" to do so. (*Shedd*, 302 Ill. at 360.) However, after a party has "had his day in court and his right has been conclusively determined," he may not return to "harass" the same opponent about the same issues. (*Shedd*, 302 Ill. at 360.) Thus, it was irrelevant whether Shedd suffered any special injury from the potential clouding of the title to his leasehold estate or from a loss in its market value. Those potentialities are irrelevant because *Norin* cannot be read to provide immunity in the case of successive suits after a party has had his rights finally and conclusively determined. (*Shedd*, 302 Ill. at 360.) In other words, although a plaintiff has a right to his day in court, he does not enjoy the right to interminably bring suit on a controversy that has been judicially and finally determined.

In virtually all cases where Illinois courts have found a special injury to support a malicious prosecution suit, the nature of the underlying suit visited upon the plaintiff some quantifiable damage-causing characteristic. In *Bank of Lyons v. Schultz* (1980), 78 Ill. 2d 235, 399 N.E.2d 1286, the supreme court held that an injunction which restrained the distribution of life insurance proceeds to a

widowed beneficiary constituted a sufficient interference with property to satisfy the special injury requirement. In that case, the "harm" suffered was not the cost of defense or the anxiety from defending against the injunction suit. Rather, the "harm" suffered was the "interference" with the widow's property so as to prevent her from using it for over nine years. *Schultz*, 78 Ill. 2d at 241.

Our review of Illinois decisions reveals a consistent reluctance on the part of our supreme court to recognize malicious prosecution suits where the underlying suit is civil in nature and does not result in special injuries emanating directly from the impact of the issues allegedly wrongfully litigated. For example, in *Schwartz v. Schwartz* (366 Ill. 247, 8 N.E.2d 668), the underlying suit upon which the subsequent malicious prosecution suit was grounded consisted of a judgment *narr* and *cognovit*, a debt action. In such proceedings, summons is unnecessary because the maker of the debt note authorizes his appearance and waives summons. Specifically, Emanuel Schwartz obtained the judgment against the maker of the judgment note, his estranged brother, William. The circuit court later vacated the judgment and dismissed the cause upon the acceptance of tender. Apparently, Emanuel had sought the judgment due to the deep-seated hostility which existed between him and William. However, the supreme court held that because the underlying suit consisted of ordinary litigation, William had to show some special injury not incident to an ordinary civil suit. To that end, William claimed his credit was injured and his property became subject to a lien. Nonetheless, the court held these to be "characteristics of all money judgments in ordinary civil cases." *Schwartz*, 366 Ill. at 252.

In view of the foregoing precedents, we must determine whether Levin's allegations of King's tortious interference suit may constitute a deprivation of liberty, or seizure of property or other special injury. We believe that they do not.

In considering whether litigation is rendered "ordinary" or injuries are special, the court's focus must properly rest upon the peculiar effect of the suit together with the remedy sought and not upon the subjective effect the suit may have on the plaintiff. King's tortious interference suit, which was indisputably civil in nature, constituted an ordinary civil suit consistent with our supreme court's holdings. Although Levin alleges in his complaint that his first amendment right to speech was "chilled" by King's suit, we note that King did not seek any provisional remedy (as in the cases of injunction, attachment or bankruptcy proceedings) so as to deny Levin his right to protest. Indeed, apart from King's alleged bad motive in filing the tortious interference suit, there is absolutely nothing unusual

about the characteristics of that suit which suggest it is anything but an ordinary civil suit. The *legal* purpose was to obtain a judgment for damages against Levin. In attempting to do so, King did not seek to enjoin Levin's conduct, attach his property, repetitiously litigate the same issue, or oppressively force Levin to defend a controversy that had been judicially determined. To hold otherwise would mean every unsuccessful civil action, no matter how pedestrian, could be the basis of a malicious prosecution suit by the mere assertion that a defendant's idiosyncratic injuries constituted special damages.

Our position is consistent with the rationale apparent in both *Norin* and *Shedd*. In *Norin*, the supreme court identified the suspension of Norin's right to the free use of his property during the pendency of the bankruptcy action as the peculiar ramification of the litigation, which differed from monetary judgment actions. We note that the suspension, however, emanated directly from the bankruptcy proceeding itself, *not* from the alleged wrongful motive of the person who filed it. Put another way, the unusual nature of the suit did not arise from *Norin's fear and anxiety* that he would not enjoy the free use of his property pending the outcome of the bankruptcy case. The unusual nature resulted directly from the very characteristics of the bankruptcy suit that inhibited the free use of plaintiff's property. Likewise, in *Shedd*, the fact that Patterson continued to litigate a matter which had been finally and conclusively determined took the litigation outside the rule announced in *Smith*.

Contrary to Levin's criticism of *Equity Associates, Inc. v. Village of Northbrook* (1988), 171 Ill. App. 3d 115, 524 N.E.2d 1119, *appeal denied* (1988), 122 Ill. 2d 573, 530 N.E.2d 243, we find it to be factually analogous to the instant case and faithful in analysis of Illinois law. In *Equity Associates*, the Village of Northbrook had unsuccessfully sought an injunction against Equity which attempted to block a real estate development. After the circuit court directed judgment against the village, Equity filed, *inter alia*, a malicious prosecution suit alleging seven areas of special damages ranging from loss of potential tenants, damage to reputation as real estate developers and construction delay costs. We rejected Equity's claim that *Norin* and *Schultz* imply that a legally cognizable interference with property occurs with the mere filing of an injunction action in which no injunction is ultimately entered: "[T]hat the [*Schultz*] court may suggest that the existence of special injury does not always depend upon the issuance of an injunction is unavailing to plaintiffs inasmuch as the court strongly implies that it was the *peculiar effect of a preliminary injunction*, as a provisional remedy, upon the plaintiff's property which motivated its holding." (Emphasis added.) *Equity Associates*, 171 Ill. App. 3d at 121.

Levin argues that, if this court concludes that the tortious interference suit amounted to an ordinary civil action, we would be improperly prejudging the case and "adopt[ing] King's defense without hearing the evidence." Levin directs our attention to what he claims is the "more appropriate judicial view of the earlier litigation," as summarized in *Westerfield Partners, Ltd. v. Hogan* (N.D. Ill. 1990), 740 F. Supp. 523. There, the district court perceived an alarming "growing trend of what have come to be known as SLAPP suits" and concluded that his "examination of the facts and allegations in plaintiff's complaint compel this court to view the underlying purpose of this suit with a great deal of skepticism." *Hogan*, 740 F. Supp. at 524-25.

We initially note that Illinois requires fact pleading as opposed to the more lenient standard of notice pleading practiced in our Federal courts. Levin has supplied this court with authority from other jurisdictions which recognize suits that are filed only to inhibit citizen protest. In those jurisdictions, however, the recognition has come from either the State's highest court (see *Protect Our Mountain v. District Court* (Colo. 1984), 677 P.2d 1361, 1368-70 (Colorado Supreme Court created a special motion to dismiss to be used to defeat "sham" litigation) or its legislature. (See Cal. Civ. Proc. Code § 425.16 (Deering Supp. 1994); N.Y. Civ. Prac. L. & R. §§ 3211(g), 3212(h) (McKinney Supp. 1994).) Neither the Illinois legislature nor the Illinois Supreme Court has recognized this form of litigation. Because we believe this is a matter best left for either legislative debate or for our supreme court's rule-making authority, we decline to recognize the "SLAPP suit" as extraordinary civil litigation for purposes of satisfying the elements of a malicious prosecution suit.

As stated above, we believe that in view of the supreme court's decisions, the proper inquiry as to a civil suit's ordinariness is one which focuses on the characteristics of the suit itself. Any other method utilized would invite a parade of malicious prosecution suits based upon subjective standards that never could be determined much less satisfied in the absence of an allegation of special injuries.

To be sure, there are those that can be found who support such a cause of action. Levin calls our attention to his "trial expert," a sociologist who "specializes in law and society issues." This expert is also classified as a "behavioral scientist, a student of human conduct in a social context" and a professor at a western state university.[2] Levin's expert would testify "that she made a comprehensive study

---

[2]Although Levin informs us that all of the information about this witness is in the record in "Plaintiff's Response to Defendant's Motion to Bar

of the [tortious interference case] and that it is a textbook example of a suit designed to silence its defendant, that because of certain objective criteria which it displayed, criteria which are found in many other suits she has studied, she has drawn certain conclusions about the *intentions* and *objectives* of King in filing and pursuing that case to its ultimate resolution" and "the kind of damages that Levin sustained as a result of being made party to that litigation." (Emphasis added.)

We question whether the motivation of a litigator as to whether a suit was brought for "political intimidation" and how it impacted upon the opponent is the proper subject of expert opinion. However, we need not address that issue because we may not look beyond a plaintiff's complaint when reviewing a judgment on the pleadings. (*Bank & Trust Co. v. Arnold N. May Builders, Inc.* (1980), 90 Ill. App. 3d 454, 456, 413 N.E.2d 183.) In this case, Levin failed to allege specific facts that King either constructively or actually seized Levin's right to free speech or actively sought from the court the issuance of a provisional remedy such as an attachment or injunction to *prevent* Levin's free speech. Rather, Levin merely alleges that as a result of King's suit he "ceased voicing his opposition to the [development] and substantially reduced his activities in public affairs from that date." Moreover, although procedurally limited to a review of Levin's complaint, the circuit court considered Levin's answers to interrogatories and found that he failed to allege specific facts of a special injury. Levin's answers merely parrot language from legal commentators and legal treatises, concluding that King's tortious interference suit caused a "substantial chilling" of Levin's exercise of his rights to free expression and to petition government; "fears" of possible financial consequences, and the "possibility" of tort proceedings being initiated by "others"; and reduction of plaintiff's involvement and visibility in "public affairs." These allegations are nothing more than conclusions devoid of any factual basis—they only reflect Levin's subjective state of mind or speculate as to future happenings. (See *Doyle v. Shlensky* (1983), 120 Ill. App. 3d 807, 817, 458 N.E.2d 1120 (allegations constituting nothing more than conclusions insufficient

---

Expert Testimony," this appeal is from the circuit court's order which entered judgment on the pleadings. A motion for judgment on the pleadings is to be determined from pleadings alone, and the court must consider only those material facts and allegations that are well pleaded, disregarding conclusory allegations. *Bank & Trust Co. v. Arnold N. May Builders, Inc.* (1980), 90 Ill. App. 3d 454, 456-57, 413 N.E.2d 183.

to establish special injury).) Indeed, many of Levin's allegations are not different from allegations regarding fears or anxiety sustained in the normal course of defending a lawsuit. *Doyle*, 120 Ill. App. 3d at 817.

In so ruling, we do not intend to imply that there are no circumstances under which the interference with a citizen's right of free expression and to petition government can become the basis of a malicious prosecution suit. Rather, to satisfy the special injury requirement one must allege more than a voluntary decision not to protest as a result of the alleged wrongfully brought civil suit. Levin has not alleged any physical acts or legal proceedings, either of which were designed to prohibit plaintiff's protests. For this reason, the special injury requirement has not been satisfied.

In this context, Levin invites this court to relax the special injury rule and to adopt the reasoning of those courts in our sister States which have no such requirement. We recognize that a large number of States have abandoned the special injury requirement for the malicious prosecution of civil proceedings. Although the cases cited by Levin from other jurisdictions are informative, we must recognize our position as a court of intermediate review. As such, we decline to overrule our supreme court or to modify its decisions. See *Stopka v. Lesser* (1980), 82 Ill. App. 3d 323, 326, 402 N.E.2d 781 (declining to reject special injury requirement).

Yet another reason exists as to why we decline to depart from the special injury rule. Our supreme court has created a remedy for suits that are not well grounded in fact or law: Supreme Court Rule 137 (134 Ill. 2d R. 137). Rule 137 requires all filed pleadings to be well grounded in fact and warranted by existing law or a good-faith argument for the extension, modification or reversal of existing law. (134 Ill. 2d R. 137.) Moreover, a suit may not be brought for any improper purpose, such as to harass or cause unnecessary delay or needless increase in cost of litigation. (134 Ill. 2d R. 137.) Violation of this rule may require the offender to "pay to the other party *** reasonable expenses incurred ***, including a reasonable attorney fee." 134 Ill. 2d R. 137.

We cannot conceive how a tortious interference claim could be maliciously prosecuted except where there was an implied finding that it was brought with no reasonable basis in law or fact. Conversely, therefore, if the facts and law alleged in a civil suit are objectively reasonable, the suit cannot be turned into a "sham" by the assertion that it was motivated for ulterior purposes.

At oral argument, Levin's counsel, who also acted as trial counsel, admitted he did not seek Rule 137 sanctions in the underlying case.

738

The record is silent as to why such relief was not sought. Although the damages available under Rule 137 may be more limited than those available under a malicious prosecution action, we see no logic in abandoning the opportunity to seek costs and fees under a well-recognized method of recovery in order to pursue a yet unrecognized and problematical remedy.

The judgment of the circuit court is affirmed.

Affirmed.

COUSINS, P.J., and McNULTY, J., concur.