SECOND DIVISION

August 15, 2000

No. 1-99-3104

)

WILLIAM J. TEMPLEMAN COMPANY, an ) Appeal from the

Illinois corporation and WILLIAM ) Circuit Court of

J. TEMPLEMAN, ) Cook County

)

Plaintiffs-Appellees, )

) No. 97 CH 6172 

)

)

LIBERTY MUTUAL INSURANCE COMPANY, ) Honorable

) Michael B. Getty,

Defendant-Appellant. ) Judge Presiding.

)

JUSTICE GORDON delivered the opinion of the court:

Plaintiffs William J. Templeman Company and William J. Templeman (collectively "Templeman" or "plaintiffs") appeal from an order of the circuit court of Cook County granting summary judgement in favor of defendant Liberty Mutual Insurance Company (Liberty).  The circuit court found that two insurance policies (collectively the "policy") issued by Liberty to Templeman which covered claims against Templeman for malicious prosecution did not cover liability incurred by Templeman due to sanctions imposed by the circuit court pursuant to Illinois Supreme Court Rule 137.  On appeal Templeman argues that the trial court erred because the malicious prosecution language in the policy provides coverage for its conduct which was found to be sanctionable; because its conduct potentially raised liability under the policy and thus gave rise to a duty on the part of Liberty to defend Templeman; and because the term "malicious prosecution" in the insurance policies is ambiguous and should thus be construed in favor to Templeman.  For the reasons discussed below, we affirm.

BACKGROUND

There is no dispute as to the underlying facts in this case.  This litigation arose out of a construction dispute surrounding the building of an Embassy Suites hotel in Rosemont, Illinois.  The hotel in question was owned by E.S. O'Hare Associates (O'Hare) and the general contractor for the project was W.E. O'Neil Construction Company (O'Neil).  O'Neil entered into a subcontract with Templeman's predecessor in interest Premier Electric Company (Premier) whereby Premier would install fire alarm and detection equipment in the hotel.  Premier later sued O'Hare and O'Neil seeking to recover for extra work performed on the Embassy Suites project and for interference and delays in its performance of the subcontract which it alleged were caused by O'Neil and O'Hare.  The trial court granted partial summary judgement in favor of O'Neil.  O'Neil then moved for sanctions pursuant to Illinois Supreme Court Rule 137 (155 Ill. 2d R. 137) against Templeman and its attorney, Walter J. Trittipo (Trittipo).

On December 13, 1995, the trial court found that Templeman and Trittipo had engaged in sanctionable conduct, a decision which was ultimately upheld on appeal.  
William J. Templeman Co. et al., v. W.E. O'Neil Construction Co. et al.
, Nos. 1-96-3434 & 1-96-3557 (cons.) (1998) (unpublished order under Supreme Court Rule 23).  On January 8, 1996, Templeman gave written notice to Liberty of its claim for coverage and requested that Liberty defend it against the sanctions proceedings which were still ongoing, as the court had not yet decided the amount of the sanctions.  Templeman's insurance policy provided for coverage of claims against Templeman for malicious prosecution.  Liberty never responded to Templeman's notice of its claims.  Templeman thereupon filed a declaratory judgement action against Liberty seeking coverage.  The trial court granted summary judgement in favor of Liberty.  This appeal followed. 

ANALYSIS

The plaintiffs first argue that the malicious prosecution language in the policy is sufficient to provide coverage for the liability which plaintiffs incurred as a result of conduct which the trial court found sanctionable pursuant to Rule 137.  We disagree.  

The relevant policy language is as follows:

"1.  Insuring Agreement

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' *** to which this coverage part applies.  We will have the right and duty to defend any 'suit' seeking those damages.

* * *

 b.  This insurance applies to:

(1) 'Personal injury' caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

* * * 

10.  'Personal injury' means injury, other than 'bodily injury,' arising out of one or more of the following offenses:

* * * 

b.  Malicious prosecution;" 

As is evident from the forgoing language the policy provides coverage for malicious prosecution, a specific common law tort. "The common law tort of malicious prosecution contains significant strictures and rules."  
Spiegel v. Zurich Ins. Co.
, 293 Ill. App. 3d 129, 135, 687 N.E.2d 1099, 1102 (1997)
.  Although the conduct which would support a finding of sanctions under Rule 137 may well overlap with the elements necessary to support a finding of malicious prosecution, the two categories are nevertheless discrete and distinct and under the prevailing precedent coverage for malicious prosecution does not automatically extend coverage for conduct sanctionable under Rule 137.

The case of 
Spiegel v. Zurich Ins. Co.
, 293 Ill. App. 3d 129, 687 N.E.2d 1099, is on point.  The plaintiff in 
Spiegel
 was sanctioned by the U.S. Court of Appeals for the Seventh Circuit under Rule 38 of the Federal Rules of Appellate Procedure (Fed. R. App. P. 38) for filing a frivolous appeal.  The plaintiff then claimed coverage (which the defendant insurance company denied) under his insurance policy issued by the defendant which provided coverage for "malicious prosecution."  The 
Spiegel
 court held that where an insurance policy provided coverage for claims of malicious prosecution against the insured, the coverage did not extend to liability incurred as a result of sanctions imposed by a federal court for the filing of a frivolous appeal.   

The 
Spiegel
 court reasoned that, "Illinois law recognizes and upholds the distinction between the tort of malicious prosecution and the remedy of pleading-related sanctions available under Illinois Supreme Court Rule 137."  
Spiegel
, 293 Ill. App. 3d at 134, 687 N.E.2d at 1102 (citing 
Levin v. King
, 271 Ill. App. 3d 728, 737, 648 N.E.2d 1108, 1114 (1995)).  "The common law tort of malicious prosecution contains significant strictures and rules."  
Spiegel
, 293 Ill. App. 3d at 135, 687 N.E.2d at 1102.  Specifically, to prevail on a malicious prosecution claim the plaintiff must prove a special injury, an element that is absent from Rule 137 sanctions.  The 
Spiegel
 court further stated that no "cases have been advanced by the parties or found in research that equate malicious prosecution and court-imposed sanctions."  
Spiegel
, 293 Ill. App. 3d at 134-

35, 687 N.E.2d at 1102.  The court therefore concluded that "judicially imposed sanctions are not within the ambit of the term 'malicious prosecution' in the subject insurance policies" and that "a claim of malicious prosecution is not equivalent to sanctions imposed by a court for purposes of insurance coverage as a matter of law."  
Spiegel
, 293 Ill. App. 3d at 135, 687 N.E.2d at 1102.  

We are not persuaded by the plaintiffs' insinuations that the 
Spiegel
 court was "plainly wrong" in stating that no Illinois cases equate malicious prosecution with court imposed sanctions pursuant to Rule 137, as the authorities cited by the plaintiffs are readily distinguished.  In 
Sanelli v. Glenview State Bank
, 126 Ill. App. 3d 411, 416, 466 N.E.2d 1119, 1123 (1984) the court stated that "[s]ection 2-611 [the predecessor to Rule 137] permits sanctions against a party for conduct in the nature of malicious prosecution accomplished by false pleadings or abuse of judicial process which goes to the merits of the proceedings."  See also 
Tabor & Co. v. Gorenz
, 43 Ill. App. 3d 124, 132, 356 N.E.2d 1150, 1156 (1976) (construing section 41 of the Civil Practice Act, an earlier predecessor to Rule 137).  
Sanelli
 and 
Tabor
 do 
not
 equate Rule 137 sanctions and claims for malicious prosecution.  Rather, the cases provide that Rule 137 sanctions "
conduct
 in the 
nature
 of malicious prosecution."  (Emphasis added.)  Clearly, the teaching of 
Sanelli
 and 
Tabor
 on this point is that the conduct which is sanctionable pursuant to Rule 137 overlaps with that which is actionable through the tort of malicious prosecution.  The overlap in the conduct proscribed does not equate these two distinct proceedings themselves, and does not contravene the holding of the 
Spiegel
 court that the coverage provided for the one does not extend to the other.

The plaintiff nevertheless contends that even though coverage for malicious prosecution and coverage for Rule 137 sanctions are not interchangeable, they should be, when as here the specific conduct found to be sanctionable pursuant to Rule 137 is equivalent to the elements required to prove a claim for malicious prosecution.  Here too we disagree.
(footnote: 1)
While we are aware that the range of conduct which is sanctionable pursuant to Rule 137 may overlap with conduct which is actionable under the law of malicious prosecution, the conduct need not so overlap.  Thus even in a specific case where the conduct alleged is actionable under either theory, coverage for one does not by itself extend coverage to the other since generically malicious prosecution and sanctions under Rule 137 present different risks.    

The different risks associated with Rule 137 sanctions and malicious prosecution are illustrated by several critical differences between the two actions.  For example, malicious prosecution is a common law tort action (
Kent v. Muscarello
, 9 Ill. App. 3d 738, 740, 293 N.E.2d 6, 7 (1973) (a "suit for malicious prosecution is a common law tort action")) which may be tried to a jury (
Mack v. First Security Bank of Chicago
, 158 Ill. App. 3d 497, 500-1, 511 N.E.2d 714, 716 (1987) (malicious prosecution action below tried to a jury)) while Rule 137 sanctions are a creation of our Supreme Court (177 Ill. 2d R. 3) and are determined by the trial judge (155 Ill. 2d R. 137).  There is also a fundamental difference in the nature of the award which may be recovered.  Damages for malicious prosecution are compensatory and not intended to punish the defendant, although they may have a punitive aspect in that punitive damages may be awarded.  See 
AAA Employment, Inc. v. Weed
, 457 So.2d 428, 432 (Ala. Civ. App. 1984) (award of punitive damages requires a higher degree of malice than is necessary merely to prove malicious prosecution);  
Thieme v. MacArthur
, 285 Ill. App. 242, 253, 1 N.E.2d 514, 518 (1936) (in a malicious prosecution case in "the absence of proof of malice, appellee would only be entitled to recover compensatory damages"); see generally, 25 I.L.P. § 44 (1956).  See also 
Wilson v. Hoffman Group Inc.
, 131 Ill. 2d 308, 321, 546 N.E.2d 524, 530 (1989) ("purpose of compensatory tort damages is to compensate the plaintiff for his injuries, not to punish defendants").  Sanctions, while they may have a compensatory feature, are inherently penal in nature (
Belfour v. Schaumburg Auto
, 306 Ill. App. 3d 234, 243, 713 N.E.2d 1233, 1239 (1999) (Rule 137 sanctions are penal in nature)) and are thus analogous to punitive damages which are designed to punish wrongdoers
 and deter others from the same conduct (
Jines v. Seiber
, 193 Ill. App. 3d 390, 393, 549 N.E.2d 964, 966 (1990) (punitive damages designed to punish and deter)).

While the specific conduct in any given instance may equally support the granting of Rule 137 sanctions and a finding of malicious prosecution, coverage is not provided on the basis of the specific conduct involved which may vary from case to case.  Rather, coverage is provided generically for a range of conduct subsumed under a given category of risk.  Thus coverage provided for malicious prosecution is restricted to the risks defined by the substantiative and procedural elements associated with that theory of action and would not extend to other theories of action which would grant relief less restrictively even though the specific conduct involved in any given instance might overlap between the two.  In this case not only are the risks to the insurer different as between the two, but they may be viewed as generically greater with respect to Rule 137 sanctions than for liability under a theory of malicious prosecution.

Generically there is a wide difference between the elements of malicious prosecution and what must be proved in order to prevail on a motion for Rule 137 sanctions. To prevail in an action for malicious prosecution a plaintiff must prove that he has sustained a special injury above and beyond the trouble of ordinary legal controversy.  
Cult Awareness Network v. Church of Scientology International
, 177 Ill. 2d 267, 280, 685 N.E.2d 1347, 1354 (1997).  Rule 137 does not have a "special injury" requirement, and this court has refused to depart from that requirement in the tort of malicious prosecution for that specific reason.  
Levin
, 271 Ill. App. 3d at 737, 648 N.E.2d at 1114 (1995) (upholding the special injury rule in a malicious prosecution case partly because our "supreme court has created a remedy for suits that are not well grounded in fact or law: *** Rule 137"), construed in 
Spiegel
, 293 Ill. App. 3d at 134, 687 N.E.2d at 1102 (Illinois upholds the distinction between malicious prosecution and Rule 137 sanctions).  Thus, generically there are fewer impediments towards obtaining relief under Rule 137 than there are to obtaining relief for malicious prosecution.

However, even if for purposes of coverage the focus would be on the specific conduct involved the insurance risks under Rule 137 sanctions would still be different and in all likelihood greater than those for malicious prosecution.  This disparity between the risks insured under malicious prosecution coverage and coverage for Rule 137 sanctions even where the specific conduct is the same is manifest procedurally in, among other things, how the two are brought to court as well as who judges the facts and what sort of damages are awarded.  Malicious prosecution actions are initiated through the filing of a complaint or other pleading and constitute a separate and independent cause of action.  See generally, 720 ILCS 5/2-201 (an action shall be commenced by filing a complaint unless otherwise provided by statute);  
Zygmuntowicz v. Pepper Construction Co.
, 306 Ill. App. 3d 182, 713 N.E.2d 777 (1999) ("A party cannot be afforded relief, despite the admission of evidence supporting such relief, absent a corresponding pleading").  
Safeway Insurance Co. v. Spinak
, 267 Ill. App. 3d 513, 516, 641 N.E.2d 834, 836 (1994) ("We know of no court, adopting Rule 137 *** which has held that independent actions for malicious prosecution and abuse of process ceased to exist; nor are we prepared to so hold").  On the other hand, sanctions under Rule 137 may be imposed by the court 
sua sponte
 or initiated by the motion of an adverse party in the context of the underlying litigation. 155 Ill. 2d R. 137 ("no violation or alleged violation of this rule shall give rise to a separate civil suit").  These present additional reasons why there is greater ease and accessability to obtain relief under Rule 137 than there is under a malicious prosecution action, thus presenting an increased coverage risk for the one as opposed to the other even where the specific conduct involved would support recovery under either.

However, plaintiff contends that even if the policy's coverage for malicious prosecution does not extend to coverage for Rule 137 sanctions there would still be a duty to defend in this case.  Such a duty would exist because a Rule 137 motion for sanctions could potentially transform into a malicious prosecution action and an insurer has a duty to defend whenever an action is potentially within the policy's coverage.  Plaintiff further contends that since the defendant breached its contractual duty to defend it is now estopped from raising policy defenses or exclusions.  Once again, we disagree.

An insurer has a duty to defend its insured where the facts alleged against the insured are within or potentially within the coverage of the policy. 
Maryland Casualty Co. v. Peppers
, 64 Ill. 2d 187, 193, 355 N.E.2d 24, 28 (1976) ("If the complaint alleges facts within the coverage of the policy or potentially within the coverage of the policy the duty to defend has been established"). "There is no question that the allegations of the complaint and not the theory determine whether there is a duty to defend."  
Management Support Associates v. Union Indem. Ins. Co. of New York
, 129 Ill. App. 3d 1089, 1097, 473 N.E.2d 405, 411 (1984).  "'Potentially covered' means that the insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the possibility of a recovery under the policy."  
Western Casualty & Surety Co. v. Adams County
, 179 Ill. App. 3d 752, 756, 534 N.E.2d 1066, 1068 (1989).

It is not sufficient that the facts alleged could have been framed in a different proceeding to cover a cause of action which would fall within the policy.  Rather, it must be demonstrated that the facts alleged were sufficient to permit recovery for the potentially covered cause of action in the same proceeding in which the action was initiated for the relief that did not in and of itself fall within the covered risks of the policy.  In other words, in this case it is not enough that the facts alleged as the basis for the Rule 137 sanctions could have been utilized to support an independent collateral action for malicious prosecution if there was no possibility of recovery for malicious prosecution in the context of the proceeding brought forth to obtain the Rule 137 sanctions.

We find the case of 
Fitzsimmons v. United States Fire Insurance Co.
, 16 Misc.2d 972, 185 N.Y.S.2d 462 (N.Y. Sup. Ct., 1959), to be on point.  In 
Fitzsimmons
 an alleged employee of the insured alleged injury while on the insured's premises and instituted a claim for workmen's compensation benefits.  The employer had a comprehensive personal liability insurance policy, which excluded benefits payable or required under workmen's compensation law.  The employer requested that his insurance company defend him against the claim, and the insurance company refused.  The employer defeated the claim for compensation on the grounds that the alleged employee did not actually work for him.  The court held that the insurer did not have a duty to defend, stating that:

"[T]he claim of the injured third party was presented to the Workmen's Compensation Board the jurisdiction of which is limited to determination of claims for workmen's compensation benefits and which was powerless to award damages for any other cause.  If the company is not obligated to defend where the only action alleged in the complaint is solely within one of the exclusions of the policy, it is but the logical extension of that rule to hold that 
the insurer is not obligated to defend claims before the Workmen's Compensation Board which has jurisdiction only of matters outside the coverage of the policy.  There could be no potential action within the coverage of the policy involved in a claim before this tribunal of limited jurisdiction.
"(Emphasis added.)  
Fitzsimmons
, 16 Misc.2d 972, 185 N.Y.S.2d at 466.

The case of 
Brodek v. Indemnity Insurance Co. of North America
, 292 Ill. App. 363, 11 N.E.2d 228 (1937), is in a similar vein.  The 
Brodek
 court held that an insurance company was not required to defend an action at law for injury even if the action stated facts apparently bringing the injury within the policy because a court of law does not have jurisdiction to award worker's compensation, and the policy only covered worker's compensation.  In 
Brodek
 the plaintiff employer had an insurance policy from the defendant insurer which provided coverage for worker's compensation claims against the employer by its employees.  An injured employee failed to make a claim for compensation with the industrial commission and instead filed a suit at law against the employer.  The employer asked the insurance company to defend, which it refused to do.  On appeal, the employer argued that the employee "in his declaration stated such facts as would have supported a claim for compensation within the coverage of the policy" and that the insurance company was therefore required to defend.  In holding that the insurance company did not violate its duty to defend the court stated that the "fallacy of this argument lies in the fact that paragraph 1 (a) [of the policy] obligates the insurer to pay *** anyone entitled thereto the 
compensation
 provided for in the Compensation Act, and that Brodek [the employee] did not by virtue of his suit in the superior court become entitled to compensation because the making of a claim for compensation is jurisdictional, and before a party may become entitled to compensation such a claim must be made."(Emphasis added.)  
Brodek
, 292 Ill. App. 3d at 377, Il. N.E. 2d at 234.  The court thus held that the insurer had no duty to defend.

Similarly in the case at bar, even if the facts alleged in the motion for sanctions support an action for malicious prosecution, a court considering a Rule 137 motion for sanctions lacks jurisdiction to adjudicate a claim for malicious prosecution in the absence of an independent complaint framing that cause of action.  The circuit court does not have jurisdiction to adjudicate an issue not presented to it through proper pleadings.  See 
Ligon v. Williams
, 264 Ill. App. 3d 701, 707, 637 N.E.2d 633, 638 (1994) ("the circuit court's jurisdiction, while plenary, is not boundless, and where no justiciable issue is presented to the court through proper pleadings, the court cannot adjudicate an issue 
sua sponte
");  
Zygmuntowicz
, 306 Ill. App. 3d at 184, 713 N.E.2d at 779 ("The filing of a complaint or petition operates to invoke the court's authority to exercise its jurisdiction");
 accord, 
In re Marriage of Fox
, 191 Ill. App. 3d 514, 520, 548 N.E.2d 71, 75 (1989).  The plaintiffs never presented any pleadings seeking relief for malicious prosecution.  Rather the allegations at issue are contained in a Rule 137 motion for sanctions, which is not a pleading.  See 
In re Marriage of Sutherland
, 251 Ill. App. 3d 411, 413, 622 N.E.2d 105, 107 (1993) ("A motion is an application for a ruling or an order in a pending case. *** A pleading, in contrast, consists of a party's formal allegations of his claims or defenses").  Nor was there any possibility that the Rule 137 motion for sanctions could potentially be transformed into an action for malicious prosecution because the adjudication of such an action requires the termination of the underlying proceeding. "It is well settled that 'the termination of a prior proceeding in favor of the plaintiff *** is an essential element in a cause of action for malicious prosecution which must be factually set forth in the complaint.'"  
Executive Commercial Services, Ltd. v. Daskalakis
, 74 Ill. App. 3d 760, 766, 393 N.E.2d 1365, 1370 (1979) (affirming dismissal of counterclaim for malicious prosecution where no facts in the complaint alleged the underlying (and ongoing) proceedings had terminated).  While our supreme court has held that such prior termination need not be on the merits, prior termination for whatever reason must be factually alleged in the complaint.  
Cult Awareness Network
, 177 Ill. 2d at 272, 685 N.E.2d at 1351 ("The necessity of alleging a favorable termination in actions for malicious prosecution is a long-standing and deeply rooted principle in this court's jurisprudence").  Thus, a malicious prosecution claim can not be prosecuted within the context of the underlying proceeding by counterclaim or otherwise which is alleged to be malicious, as that proceeding has not yet terminated.  
First Trust Co. of Montana v. McKenna
, 614 P.2d 1027, 1033 (Mont. 1980) ("malicious prosecution founded on a civil action is not the proper subject of a counterclaim since it requires proof of termination of the former proceeding in favor of the defendant therein"); see generally, Annotation, 
Nature of Termination of Civil Action Required to Satisfy Element of Favorable Termination to Support Action for Malicious Prosecution
, 30 A.L.R. 4
th
 572, 583-85 (1984).  Consequently, since the claim for sanctions under Rule 137 must be brought within the context of the underlying claim there is no potential for recovery for malicious prosecution within that same proceeding. 155 Ill. 2d. R. 137 ("All proceedings under this rule shall be brought within the same civil action in which the pleading, motion or other paper referred to has been filed, and no violation or alleged violation of this rule shall give rise to a separate civil suit, but shall be considered a claim within the same civil action").

Finally, 
Aetna Life & Sur. Co. v. Northern Trust Co. of Illinois
, 169 Ill. App. 3d 678, 523 N.E.2d 1043 (1988), cited by the defendant, is inapposite.  In 
Aetna
 Northern Trust claimed Aetna had a duty to defend it in a lawsuit because Northern Trust's insurance policy with Aetna which provided that Aetna would defend Northern Trust with regard to lawsuits alleging that Northern Trust committed conduct amounting to malicious prosecution.  The court held that Aetna had no such duty as the suit against Northern Trust was not founded on a theory of malicious prosecution, but on a theory of breach of fiduciary duty.  In what we find to be dictum the court stated, "had Baron's complaint [against Northern Trust] contained a count that inartfully or incompletely alleged a cause of action sounding in malicious prosecution or a closely related legal theory *** or if the underlying complaint had contained factual allegations amounting in substance to all of the elements necessary for malicious prosecution," then Northern Trust's assertion that Aetna had a duty to defend it might have been meritorious.  That dictum would in any event not extend to instances such as the one at bar where the action was before the court by motion rather than by a complaint and where relief for malicious protection could not be forthcoming within the context of that proceeding.

 The plaintiffs next argue that the term "malicious prosecution" in the insurance policies is ambiguous, and that such ambiguity should be construed in their favor.  In support the defendant argues that the ambiguity is demonstrated by the differing interpretations of the parties in this case, the lack of a definition of "malicious prosecution" in the policy and the deposition testimony of plaintiffs' expert witness.  We disagree.

We do not find the term "malicious prosecution" as deployed in the policy to be ambiguous.  As we discussed in detail above, the malicious prosecution language does not create coverage for liability incurred as a result of Rule 137 sanctions.  
Spiegel
, 293 Ill. App. 3d at 135, 687 N.E.2d at 1102.  A term is not rendered ambiguous simply because one party asserts it to be so.  
Johnstowne Centre Partnership v. Chin
, 99 Ill. 2d 284, 288, 458 N.E.2d 480, 481 (1983) (a contract "provision is not rendered ambiguous simply because the parties do not agree on its meaning").  Nor does the lack of a definition of a term in an insurance policy render that term ambiguous.  
Harleysville Mutual Ins. Co. v. Packer
, 60 F.3d 1116, 1121 (4
th
 Cir. 1995); 11 R. Lord, Williston on Contracts § 30:4 (4
th
 ed. 1999) ("ambiguity does not necessarily exist simply because a contract requires interpretation or fails to define a term").  Finally, as the construction and interpretation of an insurance policy is a question of law, we fail to see the relevance of plaintiffs' expert witness.  
Lapham-Hickey Steel Corp. v. Protection Mutual Ins. Co.
, 166 Ill. 2d 520, 529, 655 N.E.2d 842, 846 (1995) ("The construction of an insurance policy and its provisions is a question of law"); 
McDonald's Operators Risk Management Ass'n, Inc. v. Coresource
, Inc., 307 Ill. App. 3d 187, 191, 717 N.E.2d 485, 488 (1999) (existence of an ambiguity in an insurance policy is a question of law for the court).

We find the meaning of the term "malicious prosecution" in this case is clear and unambiguous.  The term has long denoted a separate and independent tort catalogued and discussed by Blackstone in the eighteenth century.  See 3 William Blackstone, Commentaries *126 (Thomas M. Cooley ed., Callaghan & Co. 1899) (1765).  The clear import of that term denotes coverage for an insured who is sued for the established tort of malicious prosecution.  See generally, 
Spiegel
, 293 Ill. App. 3d at 135, 687 N.E.2d at 1102. 

Accordingly, for the reasons discussed above, the judgement of the circuit court of Cook County is affirmed.

Affirmed.

COUSINS, P.J., and McBRIDE, J., concur.

FOOTNOTES
1:
The plaintiffs assert that it is their conduct rather than the form of the pleadings which determines coverage citing 
Travelers Ins. Companies v. P.C. Quote, Inc.
, 211 Ill. App. 3d 719, 729, 570 N.E.2d 614, 621 (1991) ("It is not the form of the pleadings but it is the nature of the insured's conduct which determines coverage").  We note, however, that the quote from 
Travelers
 is dictum, as the 
Travelers
 court held that the insurance company had no duty to defend its insured.  Furthermore, the quote is taken out of context.  
Travelers
 is a declaratory judgement case discussing the insurer's duty to defend, not the duty to indemnify.