**PENNSYLVANIA PULP & PAPER COMPANY, INC., Appellant,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellee.**

No. 14–01–00996–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 27, 2003.

John S. Vishneski III, Chicago, IL, John Sidney Adcock, Linda K. McCloud, Houston, for Appellant.

John B. Wallace, R. Stephen Ferrell, Houston, for Appellee.

Panel consists of Justices YATES, ANDERSON, and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

This case arises from an insurance-coverage dispute between appellant/policyholder Pennsylvania Pulp & Paper Company, Inc. and appellee/insurer Nationwide Mutual Insurance Company. Pennsylvania Pulp sued Nationwide to recover the cost of defending against a counterclaim. The trial court granted summary judgment in favor of Nationwide. At issue is whether counterclaims asserting tortious interference with business relationships and misappropriation of trade secrets fall under the insurance policy's coverage of "advertising injury," and whether a counterclaim alleging a groundless Deceptive Trade Practices Act ("DTPA") claim is covered as "malicious prosecution." We find the counterclaims are not covered by the insurance policy, and we affirm the summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Nationwide issued a commercial general liability insurance policy to Pennsylvania Pulp in which it agreed to pay those sums that Pennsylvania Pulp became legally obligated to pay as damages because of certain injuries or property damage covered by the policy. Under this policy, Nationwide undertook a duty to defend Pennsylvania Pulp against any suit seeking damages for " 'Advertising injury' caused by an offense committed in the course of advertising [Pennsylvania Pulp's] goods, products, or services." The policy defines "Advertising injury" to include "injury arising out of one or more of the following offenses: ... [m]isappropriation of adver-

tising ideas or style of doing business." This policy excludes from coverage advertising injury arising out of breach of contract, "other than misappropriation of advertising ideas under an implied contract." Nationwide also agreed to defend Pennsylvania Pulp against any suit seeking damages for "personal injury," which includes injury arising out of "[m]alicious prosecution."

Over the course of two years, Pennsylvania Pulp purchased four patented holographic imaging machines ("Light Machines") from Dimensional Arts, Inc. The fourth machine purchased did not work properly. After two attempts by Dimensional Arts to repair the Light Machine, Pennsylvania Pulp sued Dimensional Arts alleging breach of contract and DTPA violations. Dimensional Arts responded with a counterclaim in which it asserted five claims against Pennsylvania Pulp: (1) breach of the licensing agreement; (2) tortious interference with prospective business relationships; (3) misappropriation of trade secrets; (4) groundless DTPA claim by Pennsylvania Pulp; and (5) patent infringement. Nationwide refused to defend Pennsylvania Pulp in the suit, and Pennsylvania Pulp sued Nationwide to recover the cost of defending itself from Dimensional Arts' claims.

Both Nationwide and Pennsylvania Pulp moved for summary judgment. Pennsylvania Pulp argued Dimensional Arts' counterclaim included allegations of misappropriation of advertising ideas or style of doing business and allegations of malicious prosecution. Nationwide argued it was not obligated to defend under the insurance policy because Dimensional Arts' counterclaim did not allege advertising or personal-injury claims. Nationwide also argued that, even if there were advertising injuries alleged, they arose out of Pennsylvania Pulp's breach of contract, and thus were excluded from coverage. The trial court granted Nationwide's motion for summary judgment and denied Pennsylvania Pulp's motion.

## II. ISSUES PRESENTED

Pennsylvania Pulp asserts the following arguments in four issues:

(1) The trial court erred in granting Nationwide's motion for summary judgment and denying Pennsylvania Pulp's motion for summary judgment;

(2) Dimensional Arts alleged facts in its counterclaim against Pennsylvania Pulp that triggered Nationwide's duty to defend under the policy's coverage for malicious-prosecution claims;

(3) Dimensional Arts alleged facts in its counterclaim against Pennsylvania Pulp that triggered coverage as advertising injuries; and

(4) Insurance coverage is not barred under the policy's breach-of-contract exclusion clause.

## III. STANDARD OF REVIEW

■ A summary judgment movant must establish its right to summary judgment on the issues presented to the trial court by conclusively proving all elements of the movant's claim or defense as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex.2000). When both parties move for summary judgment, each party must carry its own burden, and neither can prevail because of the failure of the other to discharge its burden. *INAC Corp. v. Underwriters at Lloyd's*, 56 S.W.3d 242, 247 (Tex.App.-Houston [14th Dist.] 2001, no pet.). Because each party was a movant, the burden for each was the same: to establish entitlement to a summary judgment by conclusively proving all the ele-

ments of the claim or defense as a matter of law. *Id.* When both sides move for summary judgment and the trial court grants one motion and denies the other, the appellate court must review all summary-judgment proof, determine all issues presented, and render the judgment that the trial court should have rendered. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000).

■■■ This court reviews the summary-judgment proof using familiar standards of review. *See Dolcefino v. Randolph*, 19 S.W.3d 906, 916 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). When a trial court's order granting summary judgment does not specify the grounds for the ruling, this court must affirm summary judgment if any of the summary-judgment grounds are meritorious. *FM Props. Operating Co.*, 22 S.W.3d at 872.

## IV. ANALYSIS

■■■ To resolve this insurance-coverage dispute, we apply the rules of contract construction. *See Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex.1998). In applying these rules, our primary concern is to ascertain the parties' intent as expressed in the language of the policy. *See id.* In determining the intention of the parties, we look only within the four corners of the insurance agreement to see what is actually stated, and not what was allegedly meant. *See Esquivel v. Murray Guard, Inc.*, 992 S.W.2d 536, 544 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). We must consider all of the provisions with reference to the entire contract; no single provision will be controlling. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). If a written contract is so worded that it can be given a definite or certain legal meaning, then it is unambiguous, and we may not accept parol evidence as to the parties' intent. *Kelley–Coppedge*,

980 S.W.2d at 464. Whether a contract is ambiguous is a question of law. *Id.*

■■■ In analyzing insurance-coverage disputes of this nature, we conduct a two-part analysis, looking first to the policy and then to the pleading to determine if coverage exists. If a pleading does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured. *Nat'l Union Fire Ins Co. v. Merch. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997). An insurer's duty to defend is determined by the allegations in the pleadings and the language of the insurance policy. *Id.* This standard for determining coverage from the four corners of the pleading and the four corners of the insurance policy is referred to as the "eight corners" rule. *See id.* When we apply the "eight corners" rule, we give the allegations in the petition a liberal interpretation. *Id.* If the pleading does not state facts sufficient to bring the case clearly within or without the coverage, the general rule is that the insurer is obligated to defend if *potentially* there is a case under the pleading within the coverage of the policy. *See id.* In making this determination, we must focus on the underlying pleading's factual allegations that show the origin of the damages rather than on the legal theories alleged. *See id.* We will not read facts into the pleadings, nor will we look outside the pleadings, or imagine factual scenarios which might trigger coverage. *See id.* at 142.

### A. Did Dimensional Arts assert a claim against Pennsylvania Pulp for advertising injury?

Dimensional Arts' counterclaim against Pennsylvania Pulp included claims for tortious interference with prospective business relationships and misappropriation of trade secrets. Pennsylvania Pulp asserts these are claims seeking damages for ad-

vertising injury, which Nationwide has a duty to defend. To determine whether Dimensional Arts alleged advertising injuries, we utilize the "eight corners" rule and compare Dimensional Arts' counterclaim with the terms of the policy, focusing on the origin of damages rather than the legal theories alleged. *See id.*

 In its counterclaim, Dimensional Arts made the following factual allegations:

(1) The Light Machines operate using patented technology and Pennsylvania Pulp purchased the Light Machines under a nontransferable License Agreement, preventing Pennsylvania Pulp from duplicating, reselling, transferring, reprogramming, or modifying the Light Machines without Dimensional Arts' express written consent;

(2) The License Agreement requires Pennsylvania Pulp to maintain the confidentiality of Dimensional Arts' patent applications and trade secrets and to exercise all necessary precautions and safeguards to prevent the unauthorized disclosure of Dimensional Arts' proprietary technology and information; and

(3) The License Agreement prohibits Pennsylvania Pulp from making the Light Machines available for inspection to anyone else and from disclosing or using Dimensional Arts' patented technology and trade secrets except as expressly stated in the agreement.

Pennsylvania Pulp asserts that the following part of Dimensional Arts' counterclaim alleges sufficient facts to trigger Nationwide's duty to defend Pennsylvania Pulp against suits seeking damages for advertising injury, as defined in the policy:

In the fall of 1995, Dimensional Arts hired Anthony Heath.

Mr. Heath executed an Employment Agreement, Covenant Not to Compete, and a Confidential Employee Information Agreement in connection with his employment. . . . These agreements obligate Heath to maintain the confidentiality of Dimensional Arts' patents, patent applications, trade secrets, and other proprietary technology and information, and prohibit him from disclosing this information to third parties.

Heath was further obligated to return to Dimensional Arts all drawings, blueprints, manuals, notes and other secret or confidential information and trade secrets upon the termination of his employment with Dimensional Arts for any reason.

Pennsylvania Pulp hired Mr. Heath in mid 1996. Pennsylvania Pulp did so with knowledge of Mr. Heath's obligations under his agreement with Dimensional Arts.

Pennsylvania Pulp expressly represented to Dimensional Arts that it was hiring Heath solely to operate and maintain the Light Machines which it had purchased from Dimensional Arts.

. . . **Holographic Label Converting ("HLC")**

On several occasions, HLC had expressed interest in purchasing and licensing a Light Machine from Dimensional Arts. However, HLC never purchased a Light Machine from Dimensional Arts.

. . .

Dimensional Arts recently learned that Pennsylvania Pulp entered into an agreement with HLC concerning a Dimensional Arts Light Machine.

HLC obtained possession of a Light Machine from Pennsylvania Pulp in violation of the License Agreement. HLC used Dimensional Arts' patented method

to manufacture holograms without a license or Dimensional Arts' consent.

Pennsylvania Pulp and Mr. Heath, individually or in concert:

a) allowed third parties access to Dimensional Arts' Light Machines and related technologies;

b) interfered with prospective customers of Dimensional Arts for the Light Machine; and

c) disclosed Dimensional Arts' trade secrets and proprietary technology to third parties.

. . .

Further, as a result of Pennsylvania Pulp's improper disclosure and supply of the Light Machines to HLC, Dimensional Arts was damaged by the loss of a license and sale of a Light Machine to HLC.

### . . . Misappropriation of Trade Secrets

Pennsylvania Pulp disclosed the proprietary Light Machine and its operation to HLC without Dimensional Arts' consent.

Dimensional Arts has been damaged and will continue to be damaged by Pennsylvania Pulp's misappropriation of Dimensional Arts' trade secrets.[1]

The insurance policy provides coverage for " 'Advertising injury' caused by an offense committed in the course of advertising [Pennsylvania Pulp's] goods, products or services." Under the part of the definition of "advertising injury" on which Pennsylvania Pulp relies, " 'Advertising injury' means injury arising out of one or more of the following offenses: . . . [m]isappropriation of advertising ideas or style of doing business." Dimensional Arts did not allege in its counterclaim that Pennsylvania Pulp imitated or used Dimensional Arts' advertising ideas or style of doing business. Dimensional Arts did not allege any facts related to, or injury from, advertising activity by Pennsylvania Pulp. Although Dimensional Arts alleged Pennsylvania Pulp hired Heath, Dimensional Arts did not assert that Heath had access to any customer lists[2] or that Pennsylvania Pulp solicited customers from any customer list. Dimensional Arts did not allege any facts suggesting Pennsylvania Pulp used Dimensional Arts' advertising ideas to lure customers. The only actual damages specified by Dimensional Arts in its counterclaim arose from Pennsylvania Pulp's alleged transfer of a Light Machine to Holographic Label Converting, a potential customer of Dimensional Arts. Though we liberally construe the counterclaim to determine if it alleges facts within the coverage of the insurance policy, we do not read facts into the counterclaim, and we cannot look outside the counterclaim or imagine factual scenarios that might trigger coverage. *See Nat'l Union Fire Ins. Co.,* 939 S.W.2d at 141–42; *Clemons v. State Farm Fire and Cas. Co.,* 879 S.W.2d 385, 392–93 (Tex.App.-Houston [14th Dist.] 1994, no writ). Even giving the counterclaim a liberal construction, we conclude that it does not contain factual allegations

---

1. Paragraph numbers in the counterclaim have been omitted to avoid confusion.

2. Dimensional Arts, however, attached Heath's employment agreement, in which Heath "acknowledges that in the course of employment with [Dimensional Arts], [Heath] will receive certain trade secrets, know-how, lists of customers . . . and other confidential information and knowledge concerning the business of [Dimensional Arts] . . . which [Dimensional Arts] desires to protect. [Heath] understands that such information is confidential and agrees to not reveal such information to anyone outside [Dimensional Arts]." The fact that Heath's employment agreement contained this provision does not speak to whether Heath, in fact, had access to or received any customer lists.

indicating that Dimensional Arts sought damages for "injury arising out of ... [m]isappropriation of advertising ideas or style of doing business." *See Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 141–42; *Clemons*, 879 S.W.2d at 392–93.

■ The policy also excludes from coverage any " '[a]dvertising injury' arising out of ... [b]reach of contract, other than misappropriation of advertising ideas under an implied contract." The non-transferable licensing agreement between Dimensional Arts and Pennsylvania Pulp expressly stated the Light Machine "cannot be resold to use the patented process" without Dimensional Arts' express written consent. Pennsylvania Pulp agreed "to hold in confidence and to exercise all necessary precautions and safeguard the proprietary nature of, and prevent the unauthorized disclosure and use of DIMENSIONAL ARTS [sic] know-how and information." Under the unambiguous language of the counterclaim, all of the alleged "advertising injury" claims assert injury to Dimensional Arts based on Pennsylvania Pulp's alleged breach of the licensing agreement. As such, the policy's breach-of-contract exclusion clause for advertising injuries excludes those claims from coverage. Accordingly, we hold the trial court correctly granted Nationwide's motion for summary judgment on the purported advertising claims. Pennsylvania Pulp's third and fourth issues are overruled.

## B. Did Dimensional Arts assert a claim against Pennsylvania Pulp for malicious prosecution?

■ Dimensional Arts also alleged a claim against Pennsylvania Pulp for asserting a groundless DTPA claim. Dimensional Arts brought this claim under section 17.50(c) of the Texas Business and Commerce Code. *See* TEX. BUS. & COM.CODE

§ 17.50(c). Pennsylvania Pulp argues this claim is actually a claim for "malicious prosecution" that is covered under the insurance policy. Again, we perform the "eight corners" analysis. *See Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 141.

■ In its counterclaim, Dimensional Arts alleged Pennsylvania Pulp's DTPA claim was groundless, brought in bad faith, or brought for the purpose of harassment. The insurance policy does not define "[m]alicious prosecution." Under Texas law, claims for malicious prosecution have the following elements:

(1) the institution or continuation of civil proceedings against the plaintiff;

(2) by or at the insistence of the defendant;

(3) malice in the commencement of the proceeding;

(4) lack of probable cause for the proceeding;

(5) termination of the proceeding in plaintiff's favor; and

(6) special damages resulting from some physical interference with a party's person or property in the form of an arrest, attachment, injunction, or sequestration.

*Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207–09 (Tex.1996).

■ Pennsylvania Pulp argues that a DTPA counterclaim under section 17.50(c) of the Texas Business and Commerce Code falls under the ordinary meaning of "malicious prosecution" and that we should adopt this meaning rather than the meaning given in Texas common law. Pennsylvania Pulp points to a dictionary definition of the term and argues that, as used in the insurance policy, it means "[t]he bringing of a civil or criminal proceeding against another in a court of law without reasonable cause and with malicious intent." WEBSTER'S THIRD NEW INTERNATIONAL DIC-

TIONARY 1367 (1993 ed.). Thus, we must determine what this term means in the context of the parties' insurance agreement.

Though the meaning of "malicious prosecution," as used in a commercial general liability insurance policy, appears to be an issue of first impression under Texas law, many other courts throughout the country have addressed this issue. Most have held that "malicious prosecution" in an insurance policy means the technical legal definition of "malicious prosecution" under the applicable jurisdiction's tort law. *See Atlantic Mut. Ins. Co. v. Atlanta Datacom, Inc.,* 139 F.3d 1344, 1345–46 (11th Cir. 1998) (holding that, under Georgia law, the term "malicious prosecution" in an insurance policy is unambiguous and means the state-law definition of that claim); *Parker Supply Co., Inc. v. Travelers Indem. Co.,* 588 F.2d 180, 182–83 (5th Cir.1979) (holding that, under Alabama law, the term "malicious prosecution" in an insurance policy is unambiguous and means the common-law definition of that claim); *Northwestern Nat. Cas. Co. v. Century III Chevrolet, Inc.,* 863 F.Supp. 247, 248–50 (W.D.Pa.1994) (holding that, under Pennsylvania law, the term "malicious prosecution" in an insurance policy derives its meaning from the state-law concerning that claim); *Ethicon, Inc. v. Aetna Cas. & Sur. Co.,* 737 F.Supp. 1320, 1333 (S.D.N.Y. 1990) (holding that, under New Jersey coverage law, the term "malicious prosecution" in an insurance policy means the state-law definition of that claim); *William J. Templeman Co. v. Liberty Mut. Ins. Co.,* 316 Ill.App.3d 379, 249 Ill.Dec. 65, 735 N.E.2d 669, 672–79 (Ill.App.Ct.2000) (holding that "malicious prosecution" in insurance policy unambiguously means common-law claims for malicious prosecution and does not cover motions for sanctions under state rule of civil procedure alleging that insured filed frivolous pleadings);

*Spiegel v. Zurich Ins. Co.,* 293 Ill.App.3d 129, 227 Ill.Dec. 617, 687 N.E.2d 1099, 1100–02 (1997) (holding that, as a matter of law, "malicious prosecution" in insurance policy means common-law claims for malicious prosecution and does not cover motions for sanctions under Federal Rule of Appellate Procedure 38 alleging that insured filed frivolous appeal); *Employers Mut. Cas. Co. v. Cedar Rapids Television Co.,* 552 N.W.2d 639, 643 (Iowa 1996) (holding that, under Iowa law, the term "malicious prosecution" in an insurance policy means the common-law definition of that claim); *but see Lunsford v. Am. Guar. & Liab. Ins. Co.,* 18 F.3d 653, 654–56 (9th Cir.1994) (holding that, under California coverage law, "malicious prosecution" in an insurance policy covers "abuse of process" claims because this term is ambiguous, given that a layperson's understanding would differ from the legal definition of the term).

██ Texas courts give terms used in an insurance contract their ordinary and generally accepted meaning unless the policy shows the words were meant in a technical or different sense. *Sec. Mut. Cas. Co. v. Johnson,* 584 S.W.2d 703, 704 (Tex. 1979). The insurance policy in question defines "[p]ersonal injury" to mean injury other than "bodily injury," arising out of one or more of a list of "offenses," including false arrest, detention or imprisonment, malicious prosecution, wrongful eviction, publication of libelous or slanderous material, and publication of material that violates a person's right to privacy.

The common law created the term "malicious prosecution" and it has always had a specific legal meaning. *See William J. Templeman Co.,* 249 Ill.Dec. 65, 735 N.E.2d at 679 (noting that the term "malicious prosecution" has long denoted a separate and independent tort and that it was

catalogued as such by Blackstone in the eighteenth century). In the context in which it is used in the insurance policy, it is clear that this term identifies a specific legal claim, and it is apparent that this term was intended to have its technical meaning. The plain language of the insurance policy shows that the term "malicious prosecution" was meant in a technical sense. *See Mesa Operating Co. v. California Union Ins. Co.*, 986 S.W.2d 749, 758 (Tex.App.-Dallas 1999, pet. denied) (holding that term "aggregate" was used in its technical sense throughout the insurance policy); *see also Parkans Intern., LLC v. Zurich Ins. Co.*, 299 F.3d 514, 517 (5th Cir.2002) (holding that terms "drawn by" and "drawn upon" were used in their technical, legal sense in insurance policy); *Parker Supply Co., Inc.*, 588 F.2d at 182–83 (holding that, under Alabama law, "the policies' reference to the offense of 'malicious prosecution' was not ambiguous and only a suit against [insured] for that offense would have created an obligation for the insurers to defend and indemnify"). Accordingly, we hold that the term "malicious prosecution" in the insurance policy refers to the common-law claim and that, under the unambiguous language of the policy, it has the meaning and elements ascribed to it by Texas common law. *See Tex. Beef Cattle Co.*, 921 S.W.2d at 207–09.

Pennsylvania Pulp does not assert that Dimensional Arts' counterclaim satisfied the elements for malicious prosecution under Texas common law, and, under the unambiguous language of the counterclaim, it does not. Dimensional Arts' claim against Pennsylvania Pulp under section 17.50(c) of the Texas Business and Commerce Code was alleged as a counterclaim; thus, the underlying suit (Pennsylvania Pulp's original claim) had not already terminated in Dimensional Arts' favor. Furthermore, Dimensional Arts sought only attorney's fees and costs under this claim, which does not satisfy the special-damage requirement for malicious prosecution claims. Therefore, Dimensional Arts' counterclaim does not allege the fifth or sixth elements of a claim for malicious prosecution under the common-law definition. *See Tex. Beef Cattle Co.*, 921 S.W.2d at 207–09. Accordingly, we overrule Pennsylvania Pulp's second issue.

### V. CONCLUSION

Giving the counterclaim a liberal construction, we conclude that it does not allege facts indicating that Dimensional Arts was seeking damages for " 'Advertising injury' caused by an offense committed in the course of advertising [Pennsylvania Pulp's] goods, products or services." The insurance policy excludes the alleged "advertising injury" claims from coverage because, under the unambiguous language of the counterclaim, all of these claims assert injury to Dimensional Arts based on Pennsylvania Pulp's alleged breach of the licensing agreement. Dimensional Arts did not assert a claim for malicious prosecution because it did not allege the elements of that claim under Texas common law. For these reasons, the trial court did not err in granting Nationwide's motion for summary judgment. Accordingly, we affirm the trial court's judgment.