Opinion issued November 26, 2003



     












In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01008-CV




LANDMARK CHEVROLET CORP., BILL HEARD CHEVROLET CORP.,
AND BILL HEARD ENTERPRISES, INC., Appellants

V.

UNIVERSAL UNDERWRITERS INS. CO., Appellee




On Appeal from the 270th District Court
Harris County, Texas
Trial Court Cause No. 2001-51389




O P I N I O N

          Appellants, Landmark Chevrolet Corp., Bill Heard Chevrolet Corp., and Bill
Heard Enterprises, Inc. (collectively, “the dealerships”), bring this appeal from a
judgment declaring that appellee, Universal Underwriters Insurance Company
(“Universal”), has no duty to defend them in two, underlying class-action lawsuits
brought by customers of the dealerships. We affirm.
BACKGROUND
The Underlying Lawsuits
          The dealerships were sued by two classes of former customers,


 who alleged
that, as a part of the purchase of their automobiles, they were charged a “Consumer
Services Fee” in return for a worthless coupon book. The underlying petitions allege
that the Consumer Services Fee “was not explained to [the class members] other than
to say that it was part of the price of the vehicle,” nor did the dealerships explain
“what the ‘Consumer Services’ were.” The underlying petitions specifically allege
violations of the Texas Deceptive Trade Practices Act and fraud. The petitions do not
allege that the dealerships extended credit in connection with any of the automobile
purchases, nor do they allege any violations of state or federal truth-in-lending laws.
The Policy Provisions
          Universal issued a policy to the dealerships that provided Statute and Title
E&O (STEO) coverage. Under this policy, Universal had a duty to defend any claim
against the dealerships arising out of an alleged violation of any federal, state, or local
truth-in-lending or truth-in-leasing law.
          The applicable policy provisions at issue are as follows:
WE will pay all sums the INSURED legally must pay as DAMAGES
because of STATUTE AND TITLE E&O when such insurance is
included in the declarations.
 
WE have the right and duty to defend any SUIT asking for these
DAMAGES. WE may investigate and settle any claim or SUIT WE
consider appropriate. OUR payment of the limit shown in the
declarations ends OUR duty to defend.
 
WE have no right or duty to defend SUITS for DAMAGES not covered
by or declared for this Coverage Part.
 
WE will pay all defense costs actually incurred to defend any SUIT
asking for CUSTOMER COMPLAINT DEFENSE and EMPLOYMENT
RELATED DEFENSE when such insurance is included in the
declarations. 
 
“CUSTOMER COMPLAINT DEFENSE” means any SUIT filed against
YOU during the Coverage Part period by or on behalf of a customer
arising out of the sale, lease, rental, service or repair of YOUR
PRODUCT, other than as a direct result of an OCCURRENCE or as
defined in STATUTE AND TITLE E&O.
 
“STATUTE AND TITLE E&O” means any claim or SUIT filed
against YOU other than as a result of an OCCURRENCE or
CUSTOMER COMPLAINT DEFENSE, by or on behalf of:
 
(a)a customer arising out of GARAGE OPERATIONS, because
of an alleged violation during the Coverage Part period, of
any federal, state or local:

                    (1) odometer law;
                    (2) truth-lending or truth-in-leasing law;
                    (3) auto damage disclosure law;
                    (4) competitive auto parts law;
                    (5) used car “Buyers Guide,” including federal regulation 455.

(Emphasis added).

The Declaratory Judgment Action
          Universal declined to defend the dealerships in the underlying suits under the
STEO coverage,


 on the grounds that the underlying petitions make “no legal
allegations of truth-in-lending violations,” nor do “the factual allegations indicate that
the Plaintiff(s) are claiming violations of truth-in-lending laws.” Universal then filed
this declaratory judgment action, seeking a declaration that it did not owe the
dealerships a duty to defend them in the underlying lawsuits. The trial court granted
summary judgment in Universal’s favor.
This Appeal 
          In two related points of error on appeal, the dealerships contend that the trial
court erred by granting summary judgment in Universal’s favor. Specifically, the
dealerships contend that the pleadings in the underlying cases, when construed under
the “eight corner’s rule,” are sufficient to bring the cases within Universal’s duty to
defend. Alternatively, the dealerships argue that we should consider extrinsic
evidence to supply facts absent from the pleadings in the underlying cases, so as to
trigger Universal’s duty to defend.
DUTY TO DEFEND
The “Eight Corners” Rule
          If a petition does not allege facts within the scope of coverage, an insurer is not
required to defend a suit against its insured. Nat’l Union Fire Ins. Co. v. Merchs.
Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997). To determine an insurer’s
duty to defend, we apply the “eight-corners” rule, comparing the factual allegations
in the four corners of the pleadings with the language in the four corners of the
insurance policy. Id. In applying that rule, we focus on the factual allegations that
show the origin of the damages, rather than on the legal theories alleged, give a
liberal interpretation to the allegations in the petition, and resolve doubts in favor of
coverage. Id. However, we may not read facts into the pleadings, look outside the
pleadings, or imagine factual scenarios that might trigger coverage. Id. at 142; St.
Paul Ins. Co. v. Tex. Dept. of Transp., 999 S.W.2d 881, 885 (Tex. App.—Austin
1999, pet. denied). An insurer’s duty to defend arises if the factual allegations in the
pleadings against the insured, when fairly and reasonably construed, state a cause of
action potentially covered by the policy. See Nat’l Union, 939 S.W.2d at 141. A duty
to defend any of the claims against an insured requires the insurer to defend the entire
suit. Stumph v. Dallas Fire Ins. Co., 34 S.W.3d 722, 728 (Tex. App.—Austin 2000,
no pet.). With these principles in mind, we must decide whether the factual
allegations of the underlying lawsuits potentially state a case within coverage, i.e., a
violation of truth-in-lending or truth-in-leasing laws. 
          The Federal Truth-in-Lending Act (“TILA”) requires “creditors” to make
certain “material disclosures” including, among others, these: the annual percentage
rage, the method of determining the finance charge and the balance upon which a
finance charge will be imposed, the amount of the finance charge, the amount to be
financed, the total of payments, the number of and amount of payments, and the due
dates or period of payments scheduled to repay the indebtedness. See 15 U.S.C. §
1602(f), (u) (2000). Similarly, the Motor Vehicle Installment Sales Act (MVISA)
requires that motor-vehicle installment sales contain certain disclosures. See Tex.
Fin. Code Ann. §§ 348.001-348.518 (Vernon 1998 & Supp. 2004). A retail
installment transaction, generally, is a sale in which the buyer agrees to pay part or
all of the cash price in deferred installments. Tex. Fin. Code Ann. § 348.001(7)
(Vernon 1998).
          Even giving the pleadings in the Lopez and Sadler suits the required liberal
construction, we conclude that they do not allege facts indicating that the Lopez and
Sadler plaintiffs are seeking damages for a violation of a federal or state truth-in-lending or truth-in-leasing law. The petitions do not allege, as required to state a
claim under TILA, that the dealerships were “creditors” or that the automobile
purchases were made on credit. Similarly, the petitions do not allege, as required to
state a claim under MVISA, that the cash value of the automobiles was to be paid in
deferred installments. Because the pleadings in the Lopez and Sandler cases did not
allege facts necessary to support a cause of action under federal or state truth-in-lending or truth-in-leasing laws, the trial court did not err by granting Universal’s
summary judgment motion. See Penn. Pulp & Paper Co. v. Nationwide Mut. Ins. Co.,
100 S.W.3d 566, 575 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (holding
no duty to defend because, even though malicious prosecution claims would be
covered by the policy, underlying petition did not allege elements necessary to state
a claim for malicious prosecution).
Consideration of Extraneous Evidence
          In issue two, the dealerships argue that we should create an exception to the
“eight corners rule” and consider unpleaded, but undisputed, factual allegations. 
Essentially, the dealerships argue that we should consider extrinsic evidence to
supply the missing factual allegation, i.e., that the automobile sales were made on
credit. We begin by noting that the Texas Supreme Court has never recognized an
exception to the “eight corners rule” to permit the introduction of extraneous
evidence.
          Additionally, this Court has specifically considered, and rejected, such an
exception. In Tri-Coastal Contractors, Inc. v. Hartford Underwriters Ins. Co., 981
S.W.2d 861, 862-64 (Tex. App.—Houston [1st Dist.] 1998, pet. denied), the insurer
declined to defend Tri-Coastal in a suit brought by one of Tri-Coastal’s employees,
contending that it owed no duty to Tri-Coastal under the contract because Tri-Coastal
had paid the injured employee worker’s compensation benefits, a fact that precluded
coverage. Id. at 862. As proof that Tri-Coastal had paid the injured employee
worker’s compensation benefits, the insurance company attached copies of canceled
worker’s compensation checks, which had been paid to the injured employee. Id. 
The trial court granted summary judgment in favor of the insurer. Id. On appeal, Tri-Coastal contended that the trial court erred by considering evidence outside the
allegations of the underlying petition and the policy. Id. This Court agreed, holding
that “the trial court erred in considering extrinsic evidence in determining [the
insurer’s] duty to defend.” Id. at 864.
          Accordingly, we decline to apply an exception to the “eight corners rule” to
allow extrinsic evidence to inject facts into the pleadings of the underlying cases.



          We overrule issues one and two.
          We affirm the judgment.
 
 
                                                                        Sherry Radack
                                                                        Chief Justice

Panel consists of Chief Justice Radack and Justices Keyes and Alcala.