Affirmed and Opinion filed February 27, 2003














Affirmed and
Opinion filed February 27, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-00996-CV


____________

 

PENNSYLVANIA PULP & PAPER COMPANY, INC., Appellant

 

V.

 

NATIONWIDE MUTUAL INSURANCE COMPANY, Appellee

 

_________________________________________________

 

On Appeal from
the 11th District Court

Harris County, Texas

Trial Court
Cause No. 00-40683

 

_________________________________________________

 

O P I N I O
N

            This case arises from an
insurance-coverage dispute between appellant/policyholder Pennsylvania Pulp
& Paper Company, Inc. and appellee/insurer
Nationwide Mutual Insurance Company. 
Pennsylvania Pulp sued Nationwide to recover the cost of defending
against a counterclaim.  The trial court
granted summary judgment in favor of Nationwide.  At issue is whether counterclaims asserting tortious interference with business relationships and
misappropriation of trade secrets fall under the insurance policy’s coverage of
“advertising injury,” and whether a counterclaim alleging a groundless
Deceptive Trade Practices Act (“DTPA”) claim is covered as “malicious
prosecution.”  We find the counterclaims
are not covered by the insurance policy, and we affirm the summary judgment.

I.  Factual and Procedural
Background

            Nationwide issued a commercial
general liability insurance policy to Pennsylvania Pulp in which it agreed to
pay those sums that Pennsylvania Pulp became legally obligated to pay as
damages because of certain injuries or property damage covered by the policy.
Under this policy, Nationwide undertook a duty to defend Pennsylvania Pulp
against any suit seeking damages for “‘Advertising injury’ caused by an offense
committed in the course of advertising [Pennsylvania Pulp’s] goods, products,
or services.”  The policy defines
“Advertising injury” to include “injury arising out of one or more of the
following offenses: . . . [m]isappropriation of
advertising ideas or style of doing business.” 
This policy excludes from coverage advertising injury arising out of
breach of contract, “other than misappropriation of advertising ideas under an
implied contract.”  Nationwide also
agreed to defend Pennsylvania Pulp against any suit seeking damages for
“personal injury,” which includes injury arising out of “[m]alicious
prosecution.” 

            Over the course of two years,
Pennsylvania Pulp purchased four patented holographic imaging machines (“Light
Machines”) from Dimensional Arts, Inc. 
The fourth machine purchased did not work properly.  After two attempts by Dimensional Arts to
repair the Light Machine, Pennsylvania Pulp sued Dimensional Arts alleging
breach of contract and DTPA violations. 
Dimensional Arts responded with a counterclaim in which it asserted five
claims against Pennsylvania Pulp: (1) breach of the licensing agreement; (2) tortious interference with prospective business
relationships; (3) misappropriation of trade secrets; (4) groundless DTPA claim
by Pennsylvania Pulp; and (5) patent infringement.  Nationwide refused to defend Pennsylvania
Pulp in the suit, and Pennsylvania Pulp sued Nationwide to recover the cost of
defending itself from Dimensional Arts’ claims. 


            Both Nationwide and Pennsylvania
Pulp moved for summary judgment. 
Pennsylvania Pulp argued Dimensional Arts’ counterclaim included
allegations of misappropriation of advertising ideas or style of doing business
and allegations of malicious prosecution. 
Nationwide argued it was not obligated to defend under the insurance
policy because Dimensional Arts’ counterclaim did not allege advertising or
personal-injury claims.  Nationwide also
argued that, even if there were advertising injuries alleged, they arose out of
Pennsylvania Pulp’s breach of contract, and thus were excluded from
coverage.  The trial court granted Nationwide’s motion for summary judgment and denied
Pennsylvania Pulp’s motion.  

II.  Issues Presented

            Pennsylvania Pulp asserts the
following arguments in four issues:

(1)       The
trial court erred in granting Nationwide’s motion for
summary judgment and denying Pennsylvania Pulp’s motion for summary judgment;

(2)       Dimensional
Arts alleged facts in its counterclaim against Pennsylvania Pulp that triggered
Nationwide’s duty to defend under the policy’s
coverage for malicious-prosecution claims;

(3)       Dimensional
Arts alleged facts in its counterclaim against Pennsylvania Pulp that triggered
coverage as advertising injuries; and

(4)       Insurance
coverage is not barred under the policy’s breach-of-contract exclusion clause.

 

III.  Standard of Review

            A summary judgment movant must establish its right to summary judgment on the
issues presented to the trial court by conclusively proving all elements of the
movant’s claim or defense as a matter of law.  See
Tex. R. Civ.
P. 166a(c); Havlen v. McDougall, 22 S.W.3d 343, 345 (Tex.
2000).  When both parties move for
summary judgment, each party must carry its own burden, and neither can prevail
because of the failure of the other to discharge its burden.  INAC
Corp. v. Underwriters at Lloyd’s, 56 S.W.3d 242, 247 (Tex. App.—Houston [14th
Dist.] 2001, no pet.).  Because each
party was a movant, the burden for each was the same:
to establish entitlement to a summary judgment by conclusively proving all the
elements of the claim or defense as a matter of law.  Id.  When both sides move for summary judgment and
the trial court grants one motion and denies the other, the appellate court
must review all summary-judgment proof, determine all issues presented, and
render the judgment that the trial court should have rendered.  FM
Props. Operating Co. v. City of Austin, 22 S.W.3d
868, 872 (Tex. 2000).

            This court reviews the
summary-judgment proof using familiar standards of review.  See  Dolcefino v.
Randolph, 19 S.W.3d 906, 916 (Tex. App.—Houston [14th
Dist.] 2000, pet. denied).  When a trial
court’s order granting summary judgment does not specify the grounds for the
ruling, this court must affirm summary judgment if any of the summary-judgment
grounds are meritorious.  FM Props. Operating Co., 22 S.W.3d at 872.

IV.  Analysis

            To resolve this insurance-coverage
dispute, we apply the rules of contract construction.  See
Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980
S.W.2d 462, 464 (Tex.
1998).  In applying these rules, our
primary concern is to ascertain the parties’ intent as expressed in the
language of the policy.  See id. 
In determining the intention of the parties, we look only within the
four corners of the insurance agreement to see what is actually stated, and not
what was allegedly meant.  See Esquivel v. Murray Guard, Inc., 992
S.W.2d 536, 544 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).  We must consider all of the provisions with
reference to the entire contract; no single provision will be controlling.  Coker
v. Coker, 650 S.W.2d 391, 393 (Tex.
1983).  If a written contract is so
worded that it can be given a definite or certain legal meaning, then it is
unambiguous, and we may not accept parol evidence as
to the parties’ intent.  Kelley-Coppedge,
980 S.W.2d at 464.  Whether a contract is
ambiguous is a question of law.  Id.

            In analyzing insurance-coverage
disputes of this nature, we conduct a two-part analysis, looking first to the
policy and then to the pleading to determine if coverage exists.  If a pleading does not allege facts within
the scope of coverage, an insurer is not legally required to defend a suit
against its insured.  Nat’l Union Fire Ins Co. v. Merch. Fast Motor Lines, Inc., 939 S.W.2d 139, 141
(Tex. 1997).  An insurer’s duty to defend
is determined by the allegations in the pleadings and the language of the
insurance policy.  Id.  This standard for determining coverage from
the four corners of the pleading and the four corners of the insurance policy
is referred to as the “eight corners” rule. 
See id.  When we apply the “eight corners” rule, we
give the allegations in the petition a liberal interpretation.  Id.  If the pleading does not state facts
sufficient to bring the case clearly within or without the coverage, the
general rule is that the insurer is obligated to defend if potentially there is a case under the pleading within the coverage
of the policy.  See id. 
In making this determination, we must focus on the underlying pleading’s
factual allegations that show the origin of the damages rather than on the
legal theories alleged.  See id. 
We will not read facts into the pleadings, nor will we look outside the
pleadings, or imagine factual scenarios which might trigger coverage.  See id.
at 142. 

A.        Did Dimensional Arts assert a claim
against Pennsylvania Pulp for advertising injury?

 

            Dimensional Arts’ counterclaim
against Pennsylvania Pulp included claims for tortious
interference with prospective business relationships and misappropriation of
trade secrets.  Pennsylvania Pulp asserts
these are claims seeking damages for advertising injury, which Nationwide has a
duty to defend.  To determine whether
Dimensional Arts alleged advertising injuries, we utilize the “eight corners”
rule and compare Dimensional Arts’ counterclaim with the terms of the policy,
focusing on the origin of damages rather than the legal theories alleged.  See id.


            In its counterclaim, Dimensional
Arts made the following factual allegations: 

(1)       The
Light Machines operate using patented technology and Pennsylvania Pulp
purchased the Light Machines under a nontransferable License Agreement,
preventing Pennsylvania Pulp from duplicating, reselling, transferring,
reprogramming, or modifying the Light Machines without Dimensional Arts’
express written consent; 

(2)       The
License Agreement requires Pennsylvania Pulp to maintain the confidentiality of
Dimensional Arts’ patent applications and trade secrets and to exercise all
necessary precautions and safeguards to prevent the unauthorized disclosure of
Dimensional Arts’ proprietary technology and information; and 

(3)       The
License Agreement prohibits Pennsylvania Pulp from making the Light Machines
available for inspection to anyone else and from disclosing or using
Dimensional Arts’ patented technology and trade secrets except as expressly
stated in the agreement.

 

            Pennsylvania Pulp asserts that the
following part of Dimensional Arts’ counterclaim alleges sufficient facts to
trigger Nationwide’s duty to defend Pennsylvania Pulp
against suits seeking damages for advertising injury, as defined in the policy:

            In the fall of 1995,
Dimensional Arts hired Anthony Heath.

            Mr. Heath executed an
Employment Agreement, Covenant Not to Compete, and a Confidential Employee
Information Agreement in connection with his employment. . . . These agreements
obligate Heath to maintain the confidentiality of Dimensional Arts’ patents,
patent applications, trade secrets, and other proprietary technology and
information, and prohibit him from disclosing this information to third
parties.

            Heath was further
obligated to return to Dimensional Arts all drawings, blueprints, manuals,
notes and other secret or confidential information and trade secrets upon the
termination of his employment with Dimensional Arts for any reason.  

            Pennsylvania Pulp
hired Mr. Heath in mid 1996. 
Pennsylvania Pulp did so with knowledge of Mr. Heath’s obligations under
his agreement with Dimensional Arts.

            Pennsylvania Pulp
expressly represented to Dimensional Arts that it was hiring Heath solely to
operate and maintain the Light Machines which it had purchased from Dimensional
Arts.

            . . .  Holographic Label Converting (“HLC”)

            On several occasions, HLC had expressed interest in
purchasing and licensing a Light Machine from Dimensional Arts.  However, HLC never purchased a Light Machine
from Dimensional Arts.  

. . .

            Dimensional Arts
recently learned that Pennsylvania Pulp entered into an agreement with HLC
concerning a Dimensional Arts Light Machine.

            HLC obtained
possession of a Light Machine from Pennsylvania Pulp in violation of the
License Agreement.  HLC used Dimensional
Arts’ patented method to manufacture holograms without a license or Dimensional
Arts’ consent.

            Pennsylvania Pulp and
Mr. Heath, individually or in concert:

            a)         allowed
third parties access to Dimensional Arts’ Light Machines and related
technologies;

b)         interfered
with prospective customers of Dimensional Arts for the Light Machine; and

c)         disclosed
Dimensional Arts’ trade secrets and proprietary technology to third parties.

. . .

            Further, as a result
of Pennsylvania Pulp’s improper disclosure and supply of the Light Machines to
HLC, Dimensional Arts was damaged by the 
loss of a license and sale of a Light Machine to HLC.

             . . . Misappropriation
of Trade Secrets

            Pennsylvania Pulp
disclosed the proprietary Light Machine and its operation to HLC without
Dimensional Arts’ consent.

            Dimensional Arts has been damaged and will continue to be
damaged by Pennsylvania Pulp’s misappropriation of Dimensional Arts’ trade
secrets.[1]

 

            The insurance policy provides
coverage for “‘Advertising injury’ caused by an offense committed in the course
of advertising [Pennsylvania Pulp’s] goods, products or services.” Under the
part of the definition of “advertising injury” on which Pennsylvania Pulp
relies, “‘Advertising injury’ means injury arising out of one or more of the
following offenses: . . . [m]isapprorpriation of
advertising ideas or style of doing business.” 
Dimensional Arts did not allege in its counterclaim that Pennsylvania
Pulp imitated or used Dimensional Arts’ advertising ideas or style of doing
business.  Dimensional Arts did not
allege any facts related to, or injury from, advertising activity by
Pennsylvania Pulp.  Although Dimensional
Arts alleged Pennsylvania Pulp hired Heath, Dimensional Arts did not assert
that Heath had access to any customer lists[2] or that
Pennsylvania Pulp solicited customers from any customer list.  Dimensional Arts did not allege any facts
suggesting Pennsylvania Pulp used Dimensional Arts’ advertising ideas to lure
customers.  The only actual damages
specified by Dimensional Arts in its counterclaim arose from Pennsylvania
Pulp’s alleged transfer of a Light Machine to Holographic Label Converting, a
potential customer of Dimensional Arts. 
Though we liberally construe the counterclaim to determine if it alleges
facts within the coverage of the insurance policy, we do not read facts into
the counterclaim, and we cannot look outside the counterclaim or imagine factual
scenarios that might trigger coverage.  See Nat’l Union Fire Ins. Co., 939
S.W.2d at 141–42; Clemons v. State Farm
Fire and Cas. Co., 879 S.W.2d 385, 392–93
(Tex. App.—Houston [14th Dist.] 1994, no writ). Even giving the counterclaim a
liberal construction, we conclude that it does not contain factual allegations
indicating that Dimensional Arts sought damages for “injury arising out of . .
.  [m]isapprorpriation
of advertising ideas or style of doing business.”  See Nat’l Union Fire Ins. Co.,
939 S.W.2d at 141–42; Clemons, 879
S.W.2d at 392–93.  

            The policy also excludes from
coverage any “‘[a]dvertising injury’ arising out of.
. . [b]reach of contract, other than misappropriation of advertising ideas
under an implied contract.”  The
nontransferable licensing agreement between Dimensional Arts and Pennsylvania
Pulp expressly stated the Light Machine “cannot be resold to use the patented
process” without Dimensional Arts’ express written consent.  Pennsylvania Pulp agreed “to hold in
confidence and to exercise all necessary precautions and safeguard the
proprietary nature of, and prevent the unauthorized disclosure and use of
DIMENSIONAL ARTS [sic] know-how and information.”  Under the unambiguous language of the
counterclaim, all of the alleged “advertising injury” claims assert injury to
Dimensional Arts based on Pennsylvania Pulp’s alleged breach of the licensing
agreement.  As such, the policy’s
breach-of-contract exclusion clause for advertising injuries excludes those
claims from coverage.  Accordingly, we
hold the trial court correctly granted Nationwide’s
motion for summary judgment on the purported advertising claims.  Pennsylvania Pulp’s third and fourth issues
are overruled.

B.        Did Dimensional Arts assert a claim
against Pennsylvania Pulp for malicious prosecution?

 

            Dimensional Arts also alleged a
claim against Pennsylvania Pulp for asserting a groundless DTPA claim.  Dimensional Arts brought this claim under
section 17.50(c) of the Texas Business and Commerce Code.  See
Tex. Bus. & Com. Code §
17.50(c).  Pennsylvania Pulp argues this
claim is actually a claim for “malicious prosecution” that is covered under the
insurance policy.  Again, we perform the
“eight corners” analysis.  See Nat’l Union Fire Ins. Co., 939
S.W.2d at 141.

            In its counterclaim, Dimensional
Arts alleged Pennsylvania Pulp’s DTPA claim was groundless, brought in bad
faith, or brought for the purpose of harassment.  The insurance policy does not define “[m]alicious prosecution.” 
Under Texas law,
claims for malicious prosecution have the following elements:

(1)       the
institution or continuation of civil proceedings against the plaintiff; 

(2)       by
or at the insistence of the defendant; 

(3)       malice
in the commencement of the proceeding; 

(4)       lack
of probable cause for the proceeding; 

(5)       termination
of the proceeding in plaintiff’s favor; and 

            (6)       special
damages resulting from some physical interference with a party’s person or
property in the form of an arrest, attachment, injunction, or sequestration.

 

Tex. Beef Cattle Co. v. Green, 921
S.W.2d 203, 207–09 (Tex. 1996). 

            Pennsylvania Pulp argues that a DTPA
counterclaim under section 17.50(c) of the Texas Business and Commerce Code
falls under the ordinary meaning of “malicious prosecution” and that we should
adopt this meaning rather than the meaning given in Texas common
law.  Pennsylvania Pulp points to a
dictionary definition of the term and argues that, as used in the insurance
policy, it means “[t]he bringing of a civil or criminal proceeding against
another in a court of law without reasonable cause and with malicious intent.” Webster’s Third New International Dicitionary 1367 (1993 ed.).  Thus, we must determine what this term means
in the context of the parties’ insurance agreement.

            Though the meaning of “malicious
prosecution,” as used in a commercial general liability insurance policy,
appears to be an issue of first impression under Texas law, many
other courts throughout the country have addressed this issue.  Most have held that “malicious prosecution”
in an insurance policy means the technical legal definition of “malicious
prosecution” under the applicable jurisdiction’s tort law.  See
Atlantic Mut. Ins. Co. v. Atlanta Datacom,
Inc., 139 F.3d 1344, 1345–46
(11th Cir. 1998) (holding that, under Georgia law, the term “malicious
prosecution” in an insurance policy is unambiguous and means the state-law
definition of that claim); Parker Supply
Co., Inc. v. Travelers Indem. Co., 588 F.2d 180,
182–83 (5th Cir. 1979) (holding that, under Alabama law, the term “malicious
prosecution” in an insurance policy is unambiguous and means the common-law
definition of that claim); Northwestern
Nat. Cas. Co. v. Century
III Chevrolet, Inc., 863 F.Supp. 247, 248–50
(W.D. Pa. 1994) (holding that, under Pennsylvania law, the
term “malicious prosecution” in an insurance policy derives its meaning from
the state-law concerning that claim); Ethicon, Inc. v. Aetna Cas. & Sur. Co., 737 F.Supp. 1320, 1333 (S.D. N.Y. 1990) (holding that, under
New Jersey coverage law, the term “malicious prosecution” in an insurance
policy means the state-law definition of that claim); William J. Templeman Co. v. Liberty Mut. Ins. Co., 735 N.E.2d 669, 672–79 (Ill. App. Ct.
2000) (holding that “malicious prosecution” in insurance policy  unambiguously means common-law claims for
malicious prosecution and does not cover motions for sanctions under state rule
of civil procedure alleging that insured filed frivolous pleadings); Spiegel v. Zurich Ins. Co., 687 N.E.2d
1099, 1100–02 (Ill. App. Ct. 1997) (holding that, as a matter of law,
“malicious prosecution” in insurance policy means common-law claims for
malicious prosecution and does not cover motions for sanctions under Federal
Rule of Appellate Procedure 38 alleging that insured filed frivolous appeal); Employers Mut. Cas. Co. v. Cedar Rapids Television Co., 552 N.W.2d
639, 643 (Iowa 1996) (holding that, under Iowa law, the term “malicious
prosecution” in an insurance policy means the common-law definition of that
claim); but see Lunsford v. Am. Guar.
& Liab. Ins. Co.,18 F.3d 653, 654–56 (9th
Cir. 1994) (holding that, under California coverage law, “malicious
prosecution” in an insurance policy covers “abuse of process” claims because
this term is ambiguous, given that a layperson’s understanding would differ
from the legal definition of the term).  

            Texas courts
give terms used in an insurance contract their ordinary and generally accepted
meaning unless the policy shows the words were meant in a technical or
different sense.  Sec. Mut. Cas. Co. v. Johnson, 584 S.W.2d 703, 704 (Tex.
1979).  The insurance policy in question
defines “[p]ersonal injury” to mean injury other than
“bodily injury,” arising out of one or more of a list of “offenses,” including
false arrest, detention or imprisonment, malicious prosecution, wrongful
eviction, publication of libelous or slanderous material, and publication of
material that violates a person’s right to privacy.  

            The common law created the term
“malicious prosecution” and it has always had a specific legal meaning.  See
William J. Templeman Co., 735 N.E.2d at 679
(noting that the term “malicious prosecution” has long denoted a separate and
independent tort and that it was catalogued as such by Blackstone in the
eighteenth century).  In the context in
which it is used in the insurance policy, it is clear that this term identifies
a specific legal claim, and it is apparent that this term was intended to have
its technical meaning.  The plain
language of the insurance policy shows that the term “malicious prosecution”
was meant in a technical sense.  See Mesa Operating Co. v. California Union
Ins. Co., 986 S.W.2d 749, 758 (Tex. App.—Dallas 1999, pet. denied) (holding
that term “aggregate” was used in its technical sense throughout the insurance
policy); see also Parkans Intern., LLC v. Zurich Ins. Co., 299 F.3d 514, 517 (5th Cir. 2002)
(holding that terms “drawn by” and “drawn upon” were used in their technical,
legal sense in insurance policy); Parker
Supply Co., Inc., 588 F.2 d at 182–83 (holding that, under Alabama law,
“the policies’ reference to the offense of ‘malicious prosecution’ was not
ambiguous and only a suit against [insured] for that offense would have created
an obligation for the insurers to defend and indemnify”).  Accordingly, we hold that the term “malicious
prosecution” in the insurance policy refers to the common-law claim and that,
under the unambiguous language of the policy, it has the meaning and elements
ascribed to it by Texas common
law.  See
Tex. Beef Cattle Co., 921 S.W.2d at 207–09.

            Pennsylvania Pulp does not assert
that Dimensional Arts’ counterclaim satisfied the elements for malicious
prosecution under Texas common
law, and, under the unambiguous language of the counterclaim, it does not.  Dimensional Arts’ claim against Pennsylvania
Pulp under section 17.50(c) of the Texas Business and Commerce Code was alleged
as a counterclaim; thus, the underlying suit (Pennsylvania Pulp’s original
claim) had not already terminated in Dimensional Arts’ favor.  Furthermore, Dimensional Arts sought only
attorney’s fees and costs under this claim, which does not satisfy the
special-damage requirement for malicious prosecution claims.  Therefore, Dimensional Arts’ counterclaim
does not allege the fifth or sixth elements of a claim for malicious
prosecution under the common-law definition.  See Tex. Beef Cattle Co.,
921 S.W.2d at 207–09.  Accordingly, we
overrule Pennsylvania Pulp’s second issue.




V.  Conclusion

            Giving
the counterclaim a liberal construction, we conclude that it does not allege
facts indicating that Dimensional Arts was seeking damages for “‘Advertising
injury’ caused by an offense committed in the course of advertising
[Pennsylvania Pulp’s] goods, products or services.”  The insurance policy excludes the alleged
“advertising injury” claims from coverage because, under the unambiguous
language of the counterclaim, all of these claims assert injury to Dimensional
Arts based on Pennsylvania Pulp’s alleged breach of the licensing
agreement.  Dimensional Arts did not
assert a claim for malicious prosecution because it did not allege the elements
of that claim under Texas common
law.  For these reasons, the trial court
did not err in granting Nationwide’s motion for
summary judgment.  Accordingly, we affirm
the trial court’s judgment.

                                                                                    

                                                                        /s/        Kem Thompson
Frost

                                                                                    Justice

 

Judgment rendered and Opinion filed February 27, 2003.

 

Panel consists of Justices Yates, Anderson, and
Frost.

 











            [1]  Paragraph numbers in the counterclaim have
been omitted to avoid confusion.





            [2]  Dimensional Arts, however, attached Heath’s
employment agreement, in which Heath “acknowledges that in the course of
employment with [Dimensional Arts], [Heath] will receive certain trade secrets,
know-how, lists of customers . . . and other confidential information and
knowledge concerning the business of [Dimensional Arts] . . . which
[Dimensional Arts] desires to protect. [Heath] understands that such
information is confidential and agrees to not reveal such information to anyone
outside [Dimensional Arts].”  The fact
that Heath’s employment agreement contained this provision does not speak to
whether Heath, in fact, had access to or received any customer lists.